## John Bardsley, Appt., *v.* Andrew Kaas, Admr.

In general, assumpsit for use and occupation will lie against one who, without any agreement, occupies land without the owner's consent.

But where the possession is taken and maintained under an express contract of sale, and the vendee (paying part of the purchase money) continues ready to pay the balance upon a conveyance, according to the contract, the relation of landlord and tenant does not exist, there is no ex-

NOTE.—The cases generally agree that the right of recovery in an action for use and occupation is founded upon the relation of landlord and tenant, either express or implied. The lack of harmony in the cases arises in the construction of the implied relation.

The law will imply a contract to pay rent from the mere fact of occupancy unless the character of the occupancy be such as to negative the existence of a tenancy. Chambers v. Ross, 25 N. J. L. 293-294; Mercer v. Mercer, 12 Ga. 421.

This implication may be rebutted by proof of a contract, or the existence of facts inconsistent with the relation. Stacy v. Vermont C. R. Co. 32 Vt. 551; Taylor, Land. & T. §§ 636, 637; Clark v. Clark, 58 Vt. 527, 3 Atl. 508.

Hough v. Birge, 11 Vt. 190, 34 Am. Dec. 682, in its controlling facts, was very similar to the case above reported. It was there held that a contract to purchase, and occupation under it, would rebut the implication arising from occupancy.

Where one, without the owner's consent, either express or implied, enters upon property, a mere trespasser, or under claim of title in himself,

pressed or implied contract to pay rent, and an action for use and occupation can not be maintained.

(Argued January 21, 1887. Decided January 31, 1887.)

January Term, 1886, No. 33, E. D., before Mercur, Ch. J., Gordon, Paxson, Trunkey, Sterrett, and Green, JJ. Appeal from a decree of the Orphans' Court of Philadelphia County disallowing a claim and awarding distribution. Affirmed.

Reported below, Kaas' Estate, 2 Pa. Co. Ct. 55.

The facts as they appeared at the audit of the first account of the administrator of Matthias Kaas, deceased, before Penrose, J., are thus stated in the adjudication:

The claim of John Bardsley, which was the only one present-

---

no contract to pay for the use can be implied. Brolasky v. Ferguson, 48 Pa. 434; Mackey v. Robinson, 12 Pa. 170; Newlin v. Brinton, 1 Chester Co. Rep. 233; Richey v. Hinde, 6 Ohio, 371.

Assumpsit for use and occupation will not lie at the suit of a purchaser of mortgaged premises, sold under a decree in chancery, against a tenant in possession under the mortgage. Peters v. Elkins, 14 Ohio, 344.

Whether, in the absence of any agreement for payment, the mortgagee may maintain an action against the mortgagor for use and occupation of the mortgaged premises, doubted. Murray v. Riley, 140 Mass. 490, 6 N. E. 512; Morse v. Merritt, 110 Mass. 458.

The action lies where a person enters under an agreement for a term, although he subsequently refuses to accept the lease. Little v. Martin, 3 Wend. 219, 20 Am. Dec. 688.

Or where a tenant holds over after his term has expired, the presumption in such case being that he holds as tenant upon the same terms as he held under the lease. Russell v. Fabyan, 34 N. H. 218; Eversten v. Sawyer, 2 Wend. 507; Abeel v. Radcliff, 13 Johns, 297. But see Butler v. Cowles, 4 Ohio, 213, 19 Am. Dec. 612.

To render one cotenant liable to another for rent or for use and occupation, there must be more than a mere occupancy of the estate by the former and a forbearance by the latter. Sailer v. Sailer, 41 N. J. Eq. 398, 5 Atl. 319; see also Luck v. Luck (Pa.) 4 Cent. Rep. 471 and note.

The acts of the parties in the following cases were held to rebut the presumption of tenancy: Marquette, H. & O. R. Co. v. Harlow, 37 Mich. 554, 26 Am. Rep. 538, where the owner repeatedly told the defendant that it was a trespasser; Moore v. Harvey, 50 Vt. 297, where the plaintiff testified that the defendant never agreed to pay and that he had never given the defendant permission to occupy; Edmonson v. Kite, 43 Mo. 176, where the defendant occupied under orders from a military commander.

The relationship of parent and child tends to rebut the implication of a contract to pay rent. Clark v. Clark, 58 Vt. 527, 3 Atl. 508.

The relationship of uncle and niece, under the circumstances of the case,

ed, is for a balance of $2,760.03, for use and occupation of premises 1630 Oxford street, at $40 per month, from January 10, 1879, to January 10, 1885, with interest from the end of each year to date of decedent's death, and interest upon the aggregate sum from then to the time of the presentation of the claim.

The premises, 1630 Oxford street, were purchased by Mr. Bardsley in 1875. They were subject to a mortgage of $6,000, given by a former owner, and to a mortgage for $40,000, covering a number of other properties, given by him. In the spring of 1877 a bill was posted upon the door stating that the house was for sale, and referring purchasers to the office of Mr. Bardsley, claimant, for further information. In pursuance of this notice, the decedent, on behalf of his wife, Mrs. Catherine Kaas,

held, not sufficient to rebut the presumption of an implied contract to pay rent. Spackman's Appeal, 2 Chester Co. Rep. 195.

A trespasser cannot be converted into a tenant without his consent. Hurley v. Lamoreaux, 29 Minn. 138, 12 N. W. 447, and cases cited.

A purchaser of real property cannot change the relations existing between himself and the vendor unlawfully remaining in possession, and impose upon such vendor the character of a tenant by stating to him that he should thereafter require him to pay rent. It requires the assent of both parties to make such a contract. Preston v. Hawley, 101 N. Y. 586, 5 N. E. 770.

On the other hand, in the National Oil Ref. Co. v. Bush, 88 Pa. 340, the court says it is not for the defendant, but the landlord, to say in what light he shall be regarded, whether as tenant or trespasser.

If the defendant was permitted to remain in the possession of the property, and he did so remain until the plaintiff elected, by his writ of ejectment, or otherwise, to regard him as a trespasser, up to that time, the plaintiff might recover from the defendant the worth of the premises, by the action of assumpsit; but from the time the plaintiff made his election to treat the defendant as a trespasser there could no longer be a recovery on the ground of an implied contract. National Oil Ref. Co. v. Bush, 88 Pa. 340, citing Goddard v. Hall, 55 Me. 579, and Featherstonhaugh v. Bradshaw, 1 Wend. 134.

A suit and judgment in ejectment is conclusive that the relation of landlord and tenant did not exist during the time mesne profits could be recovered in the ejectment suit. Strong v. Garfield, 10 Vt. 502.

A notice to quit does not destroy the implication of tenancy, unless the landlord has followed up the notice by some act indicative of an intent to treat the tenant as a trespasser. Grove v. Barclay, 106 Pa. 164; National Oil Ref. Co. v. Bush, 88 Pa. 340.

So the action cannot be maintained by the one who enters as owner, under the claim of right to possession. Newlin v. Brinton, 1 Chester Co. Rep. 233.

called at the place indicated, and, after some negotiation there carried on through Mr. J. S. Hammond acting as agent for the owner, agreed to purchase. Five hundred dollars was paid on account of the purchase money, and immediate possession was given of the property.

The terms of the agreement are shown by the receipt for the payment thus made, of which the following is a copy:

Rec'd, Philada., March 8, 1877, of Catherine Kaas $500 on account of purchase money for house on Oxford St., 2d door below 17th St., No. 1630, the whole purchase money being $8,000, said house being free and clear of all encumbrances and title to be perfect.                                        J. S. Hammond,
$500.                                                  for John Bardsley.

At this time the claimant seems to have been in some financial embarrassment. On the 6th of May, 1876, nearly a year before the agreement with Mrs. Kaas, he had executed a deed to Samuel Miller for the property, taking from him a declaration setting forth that it was to secure moneys due and indorsements to be made, and agreeing to convey to any person to whom Mr. Bardsley might sell, provided that the proceeds, after the deduction of all mortgages, taxes, and interests, should be paid to him (Miller). Soon after the execution of these papers judgments were obtained against Mr. Bardsley. This was before the deed was placed on record, but after its acknowledgment.

The decedent was informed of the deed to Miller, who had a desk in the office of the claimant, Mr. Bradsley; but it would seem that he did nòt know of the declaration of trust or that Miller was not the absolute owner. At his request the title papers were sent to a conveyancer, who objected to taking the title because of the judgments above referred to; which, in his opinion, while not a lien as against Miller—whom he supposed to be the absolute owner—would require explanation and create difficulty in the event of Mrs. Kaas' desiring to sell. He proposed to get rid of this difficulty by proceeding upon the $40,000 mortgage. No steps, however, were taken in this direction, though Mrs. Kaas was at all times ready to carry out her part of the contract; and whenever the decedent, up to the time of his death, met Mr. Hammond, the agent of the owner, he referred to the subject and expressed anxiety to have the contract carried into execution.

In December, 1881, the claimant called on D. H. Buck, Esq., the conveyancer employed on behalf of Mrs. Kaas, stating that he had arranged matters with Mr. Kaas, and asking for the title papers. Until this time, Mr. Buck had not known the claimant in the matter, but supposed that Miller was the owner. He declined, therefore, to surrender the papers without an order from Mr. Kaas, to whom he at once wrote, informing him of what had been asserted by the claimant. Mr. Kaas called the next day; said that he had made no arrangement with the claimant, and requested Mr. Buck to give notice that he was ready to pay the balance of purchase money whenever the difficulties as to the title were removed. After this, Mr. Buck (believing that the claimant owned the property notwithstanding his deed to Miller, and that the judgments were, therefore, a lien) declined to take the title unless a sale was made under the $6,000 mortgage.

Thus matters continued until the death of the decedent. No steps were taken by the claimant to perfect the title; no notice of a rescission of the contract, or that the vendor was unable to carry it out, or that compensation for the use of the house would be demanded, was ever given; and the vendee was at all times ready to pay the purchase money in accordance with the terms of the agreement.

In the latter part of April, 1885, Mrs. Kaas removed from the premises.

Under these circumstances can the estate of the decedent be called upon to pay for use and occupation? It would seem clear under the authorities that it cannot, even if the contract for the purchase of the property had been made by him and not by his wife.

In the note to Smith v. Stewart, 6 Johns. 46, 5 Am. Dec. 186, and Gould v. Thompson, 4 Met. 224, it is stated by the learned editors of Leading Cases in the American Law of Real Property (vol. 2, p. 258), as the result of the decisions upon the subject, that "when the contract has failed, through the default of the vendor, while the vendee may be considered as a tenant at will, yet he is not liable in an action for use and occupation for the time preceding the default of the vendor (Bell v. Ellis, 1 Stew. & P. (Ala.) 294; Little v. Pearson, 7 Pick. 301, 19 Am. Dec. 289; Hough v. Birge, 11 Vt. 191, 34 Am. Dec. 682; Jones v. Tipton, 2 Dana, 295; Sylvester v. Ralston, 31 Barb. 286; Dwight v. Cutler, 3 Mich. 566, 64 Am. Dec. 105); and he will be

entitled to emblements (Harris v. Frink, 49 N. Y. 24, 10 Am. Rep. 318; and his only accountability in the way of compensation for the use of the premises is that he will be held liable to the vendor for what he has actually made by way of profit from his occupancy of the premises, after making full allowance for his improvements and expenses. (Coffman v. Huck, 24 Mo. 496, Affirming 19 Mo. 435)."

To the same effect is 1 Sugden, Vendors & Purchasers, Perkins' ed. p. 276 and note. See also Addison, Contr. 372; Winterbottom v. Ingham, 7 Q. B. 611; Bancroft v. Wardwell, 13 Johns. 489, 7 Am. Dec. 396.

An action for use and occupation is based upon an implied contract; but a contract cannot be implied where the occupancy is under an express contract of which it is merely an incident. Of course if the contract is not carried out because of the default of the vendee, or if the latter retain possession after a rescission for any reason, he will be liable to an action for compensation. Addison, Contr. 372; 2 Sharswood & Budd Am. Law of Real Prop. 253 *et seq.* But this is inapplicable to the case now under consideration.

There is another difficulty in the way of the claimant, growing out of the fact that the wife of the decedent was the vendee, and the occupation by him was merely as a consequence of his relation to her. The case would therefore seem to come within the principle of Biery v. Ziegler, 93 Pa. 367, 39 Am. Rep. 756.

Of course, if the allegation of the petition upon which the adjudication was opened—that the decedent agreed to pay rent for the property until the performance of the contract of sale,—had been established, the right to recover would be clear; but there was no evidence of such an agreement. It is true in his interview with Mr. Buck, in 1881, the claimant stated that under the arrangement which he had then made with the decedent, the latter was to pay rent; but this was promptly denied, and no attempt was ever made to enforce the claim until it was presented in this court after the death of the alleged debtor.

The case is undoubtedly an extremely hard one for the claimant; but he had it in his power, while the decedent lived, if he found that he could not perform his contract, to rescind it, or to give notice of his intention to demand compensation for the use of the property up to the time of performance. As the evidence does not show that this was done, there is, in the opinion of the

auditing judge, no ground upon which the estate of the decedent can be held responsible.

The assignments of error specified the action of the court in deciding that the judgments against the claimant were obtained before the deed to Mr. Miller "was placed upon record but after its acknowledgment;" that decedent did not know "that Miller was not the absolute owner" of the premises in question; that no notice "that compensation for the use of the house would be demanded was ever given;" that the estate of decedent could not be made liable, "even, if the contract for the purchase of the property had been made by him and not by his wife;" that the claimant could not recover, because "of the fact that the wife of the decedent was the vendee, and the occupation by him was merely as a consequence of his relation to her;" and that there was "no ground upon which the estate of the decedent can be held liable."

*Dimner Beeber,* for appellant.—A vendee in possession under a contract of sale is a tenant at will, if the contract fails; but in reaching a conclusion as to how far the liabilities of a tenant at will are to be imposed on such a vendee, the courts are by no means unanimous.

The leading cases, Smith v. Stewart, 6 Johns. 46, 5 Am. Dec. 186, and Gould v. Thompson, 45 Mass. 224, are cases in which possession was taken by a vendee in expectation of title being given; and when the contract of sale failed, in Smith v. Stewart, by the default of the vendee, and in Gould v. Thompson, by the default of the vendor, an action for use and occupation was brought in each case. In the New York case the court held that such an action would not lie in such cases; but this case has been much shaken by that of Harris v. Frink, 49 N. Y. 24, 10 Am. Rep. 318. In the Massachusetts case the court held that such an action would lie.

Whether the plaintiff can recover in an action for use and occupation does not always depend on whether the plaintiff is in default; but is sometimes made to depend on whether the consideration money has been paid, or upon the inherent justice of the particular case.

The modern action for use and occupation has arisen upon the construction of the act of 11 George II. chap. 19, reported to be

in force in this commonwealth, in 3 Binney, 626. This statute (§ 14) is as follows: "It shall and may be lawful to and for the landlord or landlords, where the agreement is not by deed, to recover a reasonable satisfaction for the lands, tenements, or hereditaments held or occupied by the defendant or defendants, in an action on the case, for the use and occupation of what was so held or enjoyed; and if in evidence on the trial of such action, any parol demise or any agreement (not being by deed) whereon a certain rent was reserved shall appear, the plaintiff in such action shall not therefore be nonsuited, but may make use thereof as an evidence of the *quantum* of the damages to be recovered."

The English courts will liberally construe the statute so as to hold a defendant for use and occupation where it could not be possible to suppose that the parties contemplated that the relation of landlord and tenant existed. Hull v. Vaughan, 6 Price, 157.

While American courts were at first slow to imply the relation of landlord and tenant where the facts would not justify it, they have gradually progressed so far as to raise or imply such a relation in some cases where it is evident that such a relation was not contemplated by the parties.

They hold a vendee who takes possession before title is completed as a tenant at will, if the contract subsequently goes off. Gould v. Thompson, 4 Met. 224; Cheever v. Pearson, 16 Pick. 266; Howard v. Merriam, 5 Cush. 563; Township No. Six v. McFarland, 12 Mass. 325; Foley v. Wyeth, 2 Allen, 131, 79 Am. Dec. 771; Towne v. Butterfield, 97 Mass. 105.

It has also been so decided in Maine: Patterson v. Stoddard, 47 Me. 355, 74 Am. Dec. 490.

In Michigan: Dwight v. Cutler, 3 Mich. 566, 64 Am. Dec. 105.

In Indiana: Manchester v. Doddridge, 3 Ind. 360.

In North Carolina: Love v. Edmondston, 23 N. C. (1 Ired. Law) 152; Doe ex dem. Carson v. Baker, 15 N. C. (4 Dev. Law) 220, 25 Am. Dec. 708.

In South Carolina: Jones v. Jones, 2 Rich. L. 542.

In many states the vendee is held to be a tenant at will for some purposes, but not for others. In New Jersey, while it is held that the vendee in possession is not a tenant at will to sustain an action for use and occupation (Brewer v. Craig, 18 N. J. L. 215), yet "he is a tenant at will for the purpose of sus-

taining an action on the case in the nature of an action of waste" (Freeman v. Headley, 33 N. J. L. 523).

In Tennessee it was held, in Chilton v. Niblett, 3 Humph. 404, that a vendee in possession "is not the actual tenant of vendor, but for some purposes has been held quasi his tenant, but never has, we believe, so as to warrant his demanding a notice to quit when he refuses to complete the purchase."

In New Hampshire, a double character is attributed to the vendee in possession; he may be proceeded against as a trespasser or held liable in use and occupation, at the election of a vendor. Clough v. Hosford, 6 N. H. 233; Lyford v. Putnam, 35 N. H. 563; Alton v. Pickering, 9 N. H. 494; Woodbury v. Woodbury, 47 N. H. 11, 90 Am. Dec. 555.

In Pennsylvania, in order to hold one for use and occupation, it is not at all necessary that the facts at the beginning of the occupancy should be such as to indicate that the parties contemplated the relation of landlord and tenant. Grove v. Barclay, 106 Pa. 155.

The action for use and occupation is not necessarily founded upon a specific contract, written or oral, but upon the use of the premises. National Oil Ref. Co. v. Bush, 88 Pa. 335.

Occupation by the defendant, by permission of the owner, is sufficient. Stockton's Appeal, 64 Pa. 58.

*Mayer Sulzberger,* for appellee.—Before one can be allowed to open his mouth in disaffirmance of his contract of sale, he must refund the purchase money. Gans v. Renshaw, 2 Pa. St. 34, 44 Am. Dec. 152; Richardson v. Kuhn, 6 Watts, 299; Erwin v. Myers, 46 Pa. 96; Walker v. France, 112 Pa. 203, 2 Cent. Rep. 781, 5 Atl. 208.

PER CURIAM:

It may be conceded, if one occupies the land of another by consent of the latter, without any agreement, that assumpsit for use and occupation will lie. Such, however, is not this case.

Here the possession was taken and maintained under an express contract by which the appellant, in consideration of $8,000 to be paid therefor, agreed to convey to the vendee a certain house free and clear of all incumbrances, and title to be perfect. At the date of the agreement the vendee paid $500 and was at all times ready to pay the residue of the purchase money on a

deed being delivered to him according to the agreement. The vendor was not able to execute a deed according to his contract. These facts show that the vendee was not in possession under such circumstances as to create the relation of landlord and tenant. There was neither an express nor implied contract to pay rent, and no action could be maintained to recover for the use and occupation of the premises.

Decree affirmed and appeal dismissed, at the costs of the appellant.