[No. 578. Decided January 31, 1889.]

LEVI ANKENY v. VAN BUREN CLARK.

ASSUMPSIT — PLEADING — COMMON COUNTS — REPLICATION — AMENDMENT — VENDOR AND VENDEE — VALIDITY OF TITLE — RESCISSION — APPEAL — MODIFICATION OF JUDGMENT.

Where plaintiff, under a contract by which defendant was to execute to him a conveyance of certain land on delivery of a quantity of wheat, evidenced by "wheat notes," delivered the wheat, and afterwards rescinded the contract on account of failure of title, the

correct form of pleading, under the code, in an action to recover the value of the wheat, is the common count for goods sold and delivered, omitting all reference to the actual contract.

Where the answer sets up that the wheat in question was delivered in payment of certain wheat notes, a reply setting up the contract for sale of the land, defendant's want of title, etc., is not inconsistent with, nor a departure from the complaint.

The omission to plead in the reply a rescission of the contract, which does not mislead defendant, nor affect his substantial rights, may be cured by amendment at any stage of the proceedings.

A contract to sell and convey land cannot be satisfied where the title is in the United States, and the vendor has merely an equity. The vendee is entitled to a good legal title.

A bond for deed being, under Code Wash. T., § 2311, an incumbrance on the land, the vendor has a right on possession of the contract by the vendee, to have the bond canceled.

Under code Wash. T., § 475, on appeal from a judgment in favor of the vendee in an action to recover the purchase price on rescission of the contract, the court may modify the judgment by requiring the vendee, before issuance of execution, to execute a release and cancellation of the bond for deed.

On rescission of a contract of sale of land by the vendee, who has been in possession, the just and reasonable rule is to offset the vendor's claim for rent against the vendee's claim for interest on the purchase price paid.

*Error to District Court, Lincoln County.*

*B. L. & J. L. Sharpstein,* for plaintiff in error.

*Allen & Crowley,* for defendant in error.

The opinion of the court was delivered by

BURKE, C. J. — It appears from the record in this case that on October 20, 1882, at Walla Walla, in Washington Territory, Levi Ankeny, the plaintiff in error, entered into a contract with Van Buren Clark, the defendant in error, by which Ankeny ageed to sell and convey to Clark two quarter sections of land in Walla Walla county, in consideration of 12,000 bushels of wheat, to be delivered in three annual installments of 4,000 bushels each, and of the as-

sumption by Clark of a mortgage of $3,000 then on the land. This contract was evidenced by three written instruments, as follows:

1. A bond from Ankeny to Clark in the penal sum of $10,000 conditioned to convey the land to Clark upon his paying the consideration according to agreement.

2. A " wheat note" from Clark to Ankeny, which reads as follows:

"WALLA WALLA, W. T., Oct. 20, 1882.

" For value received, I promise to pay to Levi Ankeny or order, twelve thousand (12,000) bushels of good merchantable wheat, said wheat to be delivered to the owner of this note at any railroad station in Walla Walla county, Washington Ty., and payments to be made as follows: On or before Oct. 15th, 1883, four thousand (4,000) bushels; on or before Oct. 15th, 1884, four thousand (4,000) bushels; and on or before Oct. 15th, 1885, four thousand (4,000) bushels—the owner of this note to furnish sacks for said wheat."

3.    A chattel mortgage from Clark to Ankeny to secure the payment of the wheat note.

Under this agreement Clark entered into possession of the land, and continued in possession of it until the fall of 1886.   In performance of this contract, Clark, in December, 1883, delivered to Ankeny 4,167 bushels of wheat; and in September, 1885, he delivered 8,600 bushels, making 767 bushels more than the contract called for. Ankeny accepted this wheat in fulfillment of the contract.

After the delivery of the wheat to Ankeny, Clark demanded a deed for the land.   This Ankeny neglected to give, putting Clark off from time to time, upon one pretext or another, until Clark, becoming impatient, finally insisted either upon a deed to the land or payment for his wheat.   Clark was then referred by Ankeny to the latter's attorneys, who informed him that he could have a warranty deed to the quarter on the even section, and a quitclaim deed to a quarter on the odd section, or the " railroad

land," as it was called; and they further informed him that if the Northern Pacific Railroad Company should not get title to the odd section, and he should be obliged to procure title from the government, Ankeny would pay the necessary expenses of obtaining title in that way. This does not seem to have satisfied Clark, and on November 16, 1886, he served upon Ankeny the following notice:

WALLA WALLA, W. T., Nov. 16, 1886.

" *Levi Ankeny, Esq., Walla Walla, W. T.*—DEAR SIR: I have performed my part of the contract in the purchase of the land described in your bond to me. I have learned that you have no title to one hundred and sixty acres of it. You have refused to give me anything more than a quitclaim deed to this part of the land. I cannot accept such a deed. It was not what the contract called for. Unless within five days from this date you convey a perfect title to me to the whole of the land described in the bond, by a good and sufficient conveyance, I will at the end of that time, abandon this land, and surrender the possession to you, and look to you for such compensation as the law allows me on account of your violation of the contract.
          '' Respectfully,          V. B. CLARK."

Ankeny seems to have paid no attention to this notice, and Clark, several days thereafter, taking a witness with him, went to Ankeny's bank and formally surrendered possession of the land to Ankeny. Clark then abandoned possession of the land, and has not occupied it since.

Subsequent to all this, and on the 19th day of March, 1887, Clark brought this action in the district court of the First district, to recover from Ankeny the value of the 12,767 bushels of wheat delivered under the contract. The case was tried before a jury, who, upon the direction of the court, brought in a verdict for the plaintiff, and judgment was given upon the verdict. The defendant brought the case to this court under the act of 1883.

Plaintiff in error insisted that the court erred in overruling his objection to the admission of the testimony offered by defendant in error to support his action upon the trial;

that under the complaint in the action the evidence was wholly inadmissible; that defendant in error had misconceived his remedy, if he ever had one; and that, in view of the conceded facts in the case, he cannot possibly recover under his pleadings.

In view of the earnestness and confidence with which this view of the case has been pressed upon us by counsel for plaintiff in error, we shall proceed to notice the pleadings at greater length than we otherwise should have done.

The complaint in this case simply alleges the sale and delivery to the defendant of 12,767⅓ bushels of wheat; "that the same was and is reasonably worth the sum of fifty cents a bushel, or, in all, $6,383.41⅔ lawful money of the United States;" and that defendant has not paid the same, or any part thereof; and prays judgment for this amount, with interest from October 10, 1885.

The defendant answers this complaint, denying each and every allegation thereof; and, "for a further and separate answer and defense," defendant alleges the execution of the "wheat note," and the chattel mortgage to secure it, setting out both *in extenso;* and concludes by alleging that " all the wheat delivered to defendant by plaintiff was delivered and received as payment on said note, and not otherwise." He makes no mention of the bond or of any contract for the sale of land.

The plaintiff, in reply, makes a full statement of the contract for the sale of the land, setting forth the bond *in hæc verba,* and alleging performance on his part, and default on the part of defendant. The concluding paragraph of plaintiff's reply is as follows: "That, after the said plaintiff had so performed said contract in the delivery of said wheat to defendant, he duly demanded of defendant that defendant convey said real estate to plaintiff as by his said bond he had undertaken to do; that said defendant then and there neglected and refused so to do, and has ever since and still does neglect and refuse to grant and convey said premises

to plaintiff by any good and sufficient deed; and that said defendant has no title to the northeast quarter of section 19, in township 8 north, of range 37 east, of said real estate, and since the making of his said contract was not the owner or seized in fee or at all of said land.    Plaintiff alleges that the wheat mentioned and described in his complaint, except the excess thereof over the requirements of said bond, is the purchase price of said land advanced and paid by plaintiff to defendant, and that by reason of his said neglect and refusal, and inability to perform the said contract, the said defendant became and is indebted to plaintiff for the reasonable value of said wheat, and that such demand constitutes the cause of action in the complaint pleaded. Whereof plaintiff asks judgment as in the complaint."

We feel no hesitation in holding that the theory upon which plaintiff brought this action was the correct one. Under the old system of pleadings, an action *in assumpsit* would lie to recover back purchase-money paid upon a contract of sale, which has been rescinded.    2 Hil. Vend. 61, 62; *Elliot v. Edwards*, 3 Bos. & P. 181; *Eames v. Savage*, 14 Mass. 425; *Newsome v. Graham*, 10 Barn. & C. 234.

The same rule of pleading prevails in like cases under the code, and there is no good reason why it should not. When a contract is rescinded, it is abrogated and annulled. It is as if it had never existed, and the party seeking to recover back money paid under it proceeds, not upon the contract, for there is none, but upon the implied obligation that exists, on the part of the one who received money under it to pay it back to the one from whom he received it.    *Farron v. Sherwood*, 17 N. Y. 227; *McManus v. Ophir Silver Mining Co.*, 4 Nev. 15; *Wilkins v. Stidger*, 22 Cal. 232; 83 Am. Dec. 64; *Seattle & Walla Walla R. R. Co. v. Ah Kow*, 2 Wash. T. 36, 40.

The reply in this case is neither inconsistent with, nor a departure from the complaint.    It is a proper replication

to the new matter set up in the answer. It is, however, defective in not pleading a rescission of the contract. This omission, which was an evident oversight, did not mislead or prejudice the appellant, or affect his substantial rights, under the liberal provisions of our code, and was such as may be cured by amendment at any stage of the proceedings.

The next error assigned by plaintiff in error is that defendant in error neither alleged nor proved a rescission of the contract, or facts entitling him to a rescission. The record in this case clearly shows a performance of the contract, by the defendant in error, and a failure to perform by the plaintiff in error. This was not seriously disputed upon the argument. But it is insisted that by his failure to elect seasonably to disaffirm the contract the defendant in error had waived his right so to do; that before defendant in error gave his written notice of his intention to disaffirm, plaintiff in error had tendered performance of the contract by offering a quitclaim deed of the land, which defendant in error refused; and finally before defendant in error's attempted rescission, he did not, as he was bound to do, put plaintiff in error in as good condition as he was before the sale; he did not offer to release or cancel the bond, or to pay rent for the use of the land. The whole controversy between the parties in this case seems to have arisen out of a suspicion, which both parties evidently entertained, of the soundness of the title to the quarter section known as the " railroad land." Fearing this title, the defendant in error was averse to receiving a quitclaim deed, and seemed to think that under his contract, he was entitled to a warranty deed. In this construction of his contract he was mistaken. By the terms of the bond the vendor was bound, it is true, to convey to the vendee a good title to the land, but he was at liberty to convey it by any form of deed effectual for that purpose; and, under the statutes of our territory, a quitclaim deed is just as effectual to convey

the title to real estate as any other form of deed, and a grantee in a quitclaim deed is entitled to the same presumptions as to *bona fides*, and has the same rights, as a grantee in a deed of general warranty. This is undoubtedly true of a quitclaim deed which purports on its face to convey, not merely an interest, but the real estate itself. Laws 1871, p. 195; Code Wash. T., §§ 2311, 2314, 2323, 2726–2737; Laws 1885–86, p. 177.

By the statute of 1885–86, above referred to, it is provided that a quitclaim deed purporting to convey the interest of the grantor shall not be held to operate as a conveyance of an after-acquired title, unless words are added expressing such intention. The operative words of such a deed would in any event probably preclude the idea of its conveying an after-acquired title; but it is believed that under the statutes of this territory relating to deeds, and to their registration, a deed in the form of a quitclaim, which purports on its face to convey the real estate, would operate to convey even an after-acquired title. Such an instrument would be in effect a bargain and sale deed. Laws 1871, p. 195; Code Wash T., §§ 2311, 2314.

The decisions of the supreme court of the United States, to which our attention has been called, are not applicable here, because, as we have seen, this subject is governed in this territory by positive statutory regulation.

But no form of deed is sufficient to convey a title where the grantor has none; and this, we think, is the situation of the plaintiff in error with respect to the quarter section known as the " railroad land." The evidence introduced by plaintiff in error proves that the United States had the legal title to this section; that it was included within the grant of land to the Northern Pacific Railroad Company; that the railroad company conveyed it to one Huff, and Huff to plaintiff in error; but the proof leaves the legal title still in the government. Granting everything that is claimed for the title, the utmost the Northern Pacific Rail-

road Company ever had was an equitable interest; for it is well settled that the legal title does not pass to the company until the issuance of the patent, and, so far as the record shows, no patent has issued for this land. *Railway Co. v. Prescott*, 16 Wall. 603; *Railway Co. v. McShane*, 22 Wall. 444, 462; *Northern Pacific R. R. Co. v. Traill Co.*, 115 U. S. 600, 606.

By the terms of the bond in this case, plaintiff in error agreed to sell and convey this land to defendant in error. This he could not do, because he had, at best, but an equitable title, and defendant in error was entitled to a good legal title. "The legal effect of a covenant to sell," says the United States supreme court in 1 Black, 450, "is that the land shall be conveyed by a deed from one who · has a good title, or full power to convey a good title." *Washington v. Ogden*, 1 Black, 450; *Bank of Columbia v. Hagner*, 1 Pet. 455; *Turner v. McDonald*, 76 Cal. 177; 9 Am. St. Rep. 189.

But it is contended that, in any event, upon a rescission of the contract of defendant in error, plaintiff in error was entitled to have a release or cancellation of the bond which he had given for the land. In this contention plaintiff in error is right. A bond like the one in this case is, under § 2311 of the code, an incumbrance upon real estate; and, if plaintiff in error is to be put in as good condition as he was before the sale, the bond must be canceled. We think, however, that an affirmance of the judgment of the district court would operate to extinguish whatever right or title under the bond remained in defendant in error, and in effect cancel the bond. *Pence v. Langdon*, 99 U. S. 578; *American Wine Co. v. Brasher*, 13 Fed. Rep. 595.

Besides, under § 475 of the Code of Washington, the court has power to reverse, affirm, or modify the judgment of the court below; and, to prevent the possibility of harm to the plaintiff in error from this bond, the court will order the judgment below modified so as to require defendant in.

error, before an execution shall issue upon the judgment, to make and execute a proper and sufficient release or cancellation of the bond, and deposit the same with the clerk of the court for the use of plaintiff in error.   It should be observed here that the record nowhere shows that plaintiff in error ever made any complaint of the failure to release or cancel this bond before coming to this court, and there can be no doubt, upon the evidence, that the failure to cancel it was unintentional on the part of the defendant in error.

The only remaining question relates to the claim of plaintiff in error for rents during the time that defendant in error had possession of the land under the contract of purchase.   The authorities do not seem to be agreed upon the question as to the right of the vendor to rents upon a rescission of the contract of sale.   But we think the more just and reasonable rule is to offset the claim for rent against the claim for interest.   *Talbot v. Sebree's Heirs,* 1 Dana, 56; *Shields v. Bogliolo,* 7 Mo. 134; *Patrick v. Roach,* 21 Tex. 251; *White v. Tucker,* 52 Miss. 145; *Cook v. Doggett,* 2 Allen, 441; *Bardsley's Appeal,* 10 Atl. Rep. 39.

The fairness and justice of this rule are well illustrated in this case.   The vendor was the party in fault throughout.   He received the full purchase price for the land according to the terms of his contract.   He failed to perform the contract on his part.   He has never, to this day, formally tendered a deed to defendant in error; and, if defendant in error's statements that he would not accept a quitclaim deed be held to excuse plaintiff in error for not tendering a deed before this action was begun, it certainly did not excuse his failure to make a tender of a deed of some kind in his answer, or to bring a deed into court upon the trial.   Yet he did neither the one nor the other.   The defendant in error claims interest only from the time when he delivered up possession of the land to plaintiff in error, and that he is justly entitled to.

The cause will be remanded to the court below, with instructions to modify the judgment in accordance with this opinion; that is to say, the judgment will be modified only so far as to suspend the issuance of execution until the defendant in error shall execute a proper and sufficient release or cancellation of the bond mentioned in this case, and deposit such release or cancellation with the clerk of the district court for the use of the plaintiff in error.

ALLYN and NASH, JJ., concur.