[No. 32707.   Department Two.   March 30, 1954.]

JOHN E. McCOY et al., *Respondents*, v. BLANCHE A. LOWRIE
et al., *Defendants*, H. McKAY ALLEN, *Appellant*.[1]

*Therrett Towles* and *L. H. Brown*, for appellant.

*Paine, Lowe & Coffin* and *Trumbull & Ek*, for respondents.

SCHWELLENBACH, J.—This is the second appeal of this case.
See *McCoy v. Lowrie*, 42 Wn. (2d) 24, 253 P. (2d) 415.

[1]Reported in 268 P. (2d) 1003.

Frank C. Allen received and recorded a patent to certain land in Pend Oreille county, Washington, from the United States government in 1912. In 1919, he and Mrs. Allen conveyed the land to the Ione Lumber & Pole Company. The deed reserved the mineral rights in the grantors. In 1923, the Ione Lumber & Pole Company conveyed to John McCoy, without reservations or exceptions of any kind.

March 14, 1951, McCoy and wife commenced action against the heirs of Frank C. Allen and Cordelia M. Allen to quiet title to the mineral rights, basing their claim on adverse possession. After trial, the court found in favor of the plaintiffs and entered judgment accordingly.

Upon appeal, this court reversed, holding that the reservation of the mineral rights in the deed from the Allens constituted a severance of title to the mineral rights from title to the surface, and that there had been no adverse possession of the mineral rights by the McCoys. In our opinion, we stated:

"The Allen heirs must be disseised to lose their right to the minerals, and there has been no disseisin by act or statute except to the extent that H. McKay Allen may have conveyed his interest in the mineral rights by his quitclaim deed of November 30, 1950, as to which we express no opinion.

"So much of the judgment appealed from as purports to quiet title in John E. McCoy and Marjorie McCoy, his wife, to the minerals upon or in the NW-¼ of Section 15, Township 38 North, Range 42 East, W. M., against the heirs of Frank C. Allen and Cordelia M. Allen, his wife, and as awards to the McCoys a judgment for costs, is set aside, and the cause is remanded to the superior court with instructions to award such relief to the Allen heirs on their cross-complaint as the facts and the law warrant, including a judgment for costs."

In the second trial, no further testimony was taken, and the court entered judgment decreeing that certain Allen heirs (naming them) were entitled to a total of 54/72 interest in the mineral rights in the property, but that plaintiffs were entitled to an 18/72 interest therein by virtue of a quitclaim deed executed by H. McKay Allen to them. H. McKay

Allen appeals, contending that the mineral rights were not conveyed by the quitclaim deed, since they were not specifically described.

An earlier action was commenced by the McCoys in 1948. Allen was served with a summons and complaint, and a default was entered against him. Subsequent thereto, he wrote the following letter to the attorney for the plaintiffs:

> "GENERAL ADJUSTMENT BUREAU, Inc.
> Reply to
> Miner Building
> H. McKay Allen, Branch Manager
> October 22, 1948

"Mr. Fred Trumbell
Trumbell & Ek
Ione, Washington
"Dear Mr. Trumbell:
"Mother turned your letter of October 6th over to me to answer. We discussed the problem at length and although we would be very happy to cooperate with you in obtaining releases from the heirs, the practical solution without any doubt would be to institute suit to quiet title. My reasoning is that the heirs of F. C. Allen are numerous, half of them are deceased, and as a result the children of these deceased heirs would be heirs and they are scattered all over the face of the earth. We couldn't possibly round them up, and they, accordingly would be called 'unknown heirs'.
"We have quite a family here now, Mrs. Clements, the Hiltons, mother and Eleanor and I. Everyone is well and busy. We are happy to know that you and yours are also in good health and busy.

> "Kindest personal regards,
> "/s/ H. McKay Allen dr
HMA:dr        "H. McKAY ALLEN"

November 30, 1950, Mr. Allen executed the following deed:

"THE GRANTOR H. McKay Allen, one of the heirs at Law of Frank C. Allen and Cornelia H. Allen, both deceased for and in consideration of one ($1.00) dollars, in hand paid, convey and quitclaim to JOHN E. McCOY all interest in the following described real estate, situate in the county of             State of Washington: The Northwest Quarter of Section Fifteen (NW ¼ 15) Town-

ship 38 North, Range 42 East, Willamette Meridian

"Dated this 29th day of November, A.D. 1950

H. McKAY ALLEN          (Seal)

"STATE OF OREGON }
 COUNTY OF LANE  } ss.

"On this day personally appeared before me H. McKAY ALLEN to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

"GIVEN under my hand and official seal this 30 day of November, 1950

(SEAL)                     HOWARD W. BERGE<br>Notary Public in and for the<br>State of Oregon, residing at

My commission expires Oct. 11, 1954"

No question appears in the record regarding the failure to insert the name of the county in the deed. The trial court no doubt took judicial notice that Township 38 North, Range 42 E.W.M. is in Pend Oreille county.

It has been the law since statehood that a quitclaim deed is just as effectual to convey the title to real estate as any other deed, and a grantee of a quitclaim deed has the same rights as the grantee of a warranty deed, with the exception that he is given no warranties. A quitclaim deed is just as good as any other deed, if the grantor has the title to convey. *Ankeny v. Clark,* 1 Wash. 549, 20 Pac. 583; *McInerney v. Beck,* 10 Wash. 515, 39 Pac. 130.

An annotation in 162 A. L. R. 556 sets out the following by the annotator:

"It has been stated in the earlier annotation as a general rule that the decisions are in accord in holding that a quitclaim deed passes all the right, title, and interest which the grantor has at the time of making the deed and which is capable of being transferred by deed, unless a contrary intent appears, and it transfers nothing more."

Section 11, chapter 33, Laws of 1929, p. 35 (we do not quote RCW 64.04.050 because there have been some changes made), provides:

"Quit claim deeds may be in substance in the following form: The grantor (here insert the name or names and place of residence), for and in consideration of (here insert consideration) conveys and quit claims to (here insert grantee's name or names) all interest in the following described real estate (here insert description), situated in the county of ................................................, State of Washington. Dated this ................................ day of ................................, 19........ Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quit claim to the grantee, his heirs and assigns in fee of all the then existing legal and equitable rights of the grantor in the premises therein described, but shall not extend to the after acquired title unless words are added expressing such intention."

It should be noted that the statute specifically states that a quitclaim deed is deemed and held a good and sufficient conveyance in fee "of all the then existing legal and equitable rights of the grantor." Appellant's quitclaim deed, although it does not specifically mention mineral rights, does convey to McCoy "all interest in the following described real estate." At the time H. McKay Allen executed the deed, the only interest he had in the real estate was a portion of the mineral rights which had been reserved in his grandparents' deed. His deed could therefore convey no interest other than in the mineral rights.

Appellant contends that, by joining him in this action, there was an admission by respondents that appellant's deed was not intended to pass the mineral rights. In answer to that contention, the trial court aptly stated in its memorandum opinion:

"It is a matter of common practice in quieting title actions to include every person in the chain of title who might claim some interest or estate in the property. The fact that H. McKay Allen was joined in this instance is simply an adherence to the rules of established practice in this kind of a lawsuit."

Appellant further contends that, because the deed was solicited and prepared by the attorney for respondents, it should be strictly construed against a grantee who prepared it, citing 26 C. J. S. 324, Deeds, § 82e. The text states:

"These rules, however, are subservient to the ascertained intention of the parties, nor are they to be applied or invoked until all other rules of construction fail. Further, they cannot be resorted to in the absence of ambiguity or uncertainty, and in order to permit resort to them, uncertainty or doubt must not unnecessarily be introduced or raised."

There is no testimony in the record concerning the intention of the parties at the time the deed was given. Upon the execution and delivery of a deed, it will be presumed that the instrument is what it purports to be, and the burden is on the one asserting otherwise. *Moore v. Gillingham,* 22 Wn. (2d) 655, 157 P. (2d) 598. Furthermore, the instrument itself is clear and unambiguous on its face, and no interpretation is necessary.

The judgment is affirmed.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.