[No. 32926.   Department Two.   March 22, 1955.]

MORRIS BAROUH et al., *Respondents,* v. LEON ISRAEL et al., *Appellants.*[1]

[1]Reported in 281 P. (2d) 238.

*Wettrick, Flood & O'Brien,* for appellants.

*Karr, Tuttle & Campbell,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment restraining appellants from proceeding with a writ of execution and quieting title to certain real estate in respondents. Chronologically, these events occurred:

September, 1946: Albert and Rachel Israel purchased Lot 32, except the *south 5 feet* thereof, and the south 20 feet of Lot 31, Block 3, in Gilt Edge Addition to the City of Seattle, King County, Washington.

July, 1948: Marital difficulties between Albert and Rachel. Both moved out of home, leaving furniture. Albert moved in with brother, Leon, where he still resides. Rachel moved in with her parents.

Sept. 22, 1948: Rachel executed Declaration of Homestead covering Lot 32, except *south 15 feet* thereof, and south 20 feet of Lot 31.

Sept. 22, 1948: Declaration of Homestead filed.

Sept. 25, 1948: Order in divorce proceedings that property be sold and proceeds distributed.

Oct. 21, 1948: Rachel granted interlocutory order; awarded custody of minor child; awarded as her sole and separate property, Lot 32, except *south 15 feet* thereof, and south 20 feet of Lot 31.

Oct. 21, 1948: Rachel issued following receipt to Barouh: "I received $150.00 from Morris Barouh on the 21st of October for property at 327-25th Ave. Purchase price $7,000.00.

[Signed] Rachel Israel."

Oct. 30, 1948: Leon Israel granted judgment against the community of Albert and Rachel Israel and against each of them individually.

*Note:*

Nov. 22, 1950: Judgment modified to make it against Albert individually and the marital community.

Nov. 4, 1948: Barouh paid Rachel an additional $1,650 and received a quitclaim deed to Lot 32, except *south 5 feet,* and south 20 feet of Lot 31.

Feb., 1949: Barouh moved into the house; up to the time of trial had paid $3,081.95 on real estate mortgage which they had assumed; and renovated the house at an expenditure of $1,846.53.

June 29, 1949: Final Decree.

Jan. 15, 1951: *Nunc pro tunc* order in divorce proceedings correcting interlocutory order and final decree to make proper description of property.

1952: Leon procured writ of execution on his judgment and caused levy on Lot 32, except south 5 feet, and south 20 feet of Lot 31.

Sept. 15, 1952: This action commenced seeking judgment quieting title and enjoining sale of property.

Appellants assign error in quieting title as against Leon Israel upon the following grounds:

"(1) That appellant judgment creditor, by virtue of his judgment, on October 30, 1948, had a lien upon all property of the judgment debtor, including all property, title to which appeared of record in the judgment entered.

"(2) That the property described in the homestead declaration of Rachel Israel was and should have been available to satisfy the lien of appellant judgment creditor for the reason that such homestead, if any, was invalid (a) for want of a proper legal description and (b) in that no date of acknowledgment appeared therein.

"(3) That such declaration of homestead of Rachel Israel as to her actual residence or her intent to reside therein or thereon was knowingly false and under the facts of this case could give rise to no legal homestead.

"(4) That the respondents herein derived no other and different title or right to withhold the property here in issue from the reach of appellant judgment creditor than that which their grantor enjoyed."

The declaration of homestead stated:

"DECLARATION OF HOMESTEAD
"KNOW ALL MEN BY THESE PRESENTS:

"That I, RACHEL ISRAEL, do hereby certify and declare as follows, to-wit:

"(1) That I am a married woman and my husband has not made any declaration of homestead, and I therefore make this declaration for our joint benefit.

"(2) That we purchased the hereinafter described property for a homestead and intend to reside thereon and are now actually residing thereon.

"(3) That I claim the premises hereinafter described as a homestead.

"(4) That I estimate the actual cash value of the premises hereinafter described to be approximately Six Thousand ($6,000.00) Dollars. That the same is subject to a real estate mortgage held by the Washington Mutual Savings Bank, in the amount of approximately Five Thousand Six Hundred ($5,600.00) Dollars and that the value of my equity therein is approximately Six Hundred ($600.00) Dollars.

"(5) That the premises herein referred to and which is hereby claimed as a homestead is situated in King County, State of Washington, and is legally described as follows, to-wit:

"Lot 32, except the south 15 feet thereof and the south 20 feet of Lot 31 in Block 3 of Gilt Edge Add. to the City of Seattle, as per plat recorded in Vol. 99 Plats on page 88, records of said county."

"IN WITNESS WHEREOF, I have hereunto set my hand this 22 day of September, 1948.

[Signed] Rachel Israel

"STATE OF WASHINGTON ⎰ss.
   COUNTY OF KING ⎱

"THIS IS TO CERTIFY that on this .......... day of September, 1948, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned, sworn and qualified, personally appeared RACHEL ISRAEL, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledge to me that she signed and sealed the same as her free and voluntary act and deed for the uses and purposes therein mentioned.

"WITNESS MY HAND and official seal the day and year in this certificate first above written.
MORRIS A. ROBBINS
Notary Public in and for the State of
Washington, residing at Seattle."

▆▆ Was the homestead invalid for want of a proper legal description in the declaration? If the description in the declaration is erroneous to the extent that it describes property not owned by the declarant, the declaration of homestead is invalid. *Strand v. Pekola,* 18 Wn. (2d) 164, 138 P. (2d) 204. If, however, the identity of the property can be established from the description, then the description is not so erroneous as to invalidate the homestead. *Wheeler Perry Co. v. Mortgage Bond Co. of New York,* 41 Ariz. 247, 17 P. (2d) 331. Clearly, no one was misled by the slight error in describing the property in question.

▆▆ The date of the acknowledgment is blank, but this is not a material defect. 1 C. J. S. 843, Acknowledgments, § 85. Where there is an omission of the date in a certificate of acknowledgment, the court is entitled to look at the whole instrument, and if the date can thus be ascertained, the informality of the certificate may be regarded as obviated. When no date appears in a certificate of acknowledgment, the date of the instrument will be presumed to be

the date of the acknowledgment, in the absence of anything to the contrary. 1 Am. Jur. 351, Acknowledgments, § 87; *Chase, Infant, v. Whiting,* 30 Wis. 544. The declaration of homestead was dated September 22, 1948. It was filed September 22, 1948. Obviously, it was acknowledged the same day.

■ No citation of authority is necessary for the rule that a declaration of homestead must be filed in good faith. The record is clear that, at the time the declaration was filed neither Mr. nor Mrs. Israel was occupying the premises, although the furniture was there. Mrs. Israel testified:

"Q. And except for selling the house, you would have intended to have moved back there? A. Well.

"THE COURT: Your answer to that is what? A. Pardon?

"THE COURT: Counsel asked you 'except.' You state it in your own way.

"Q. Except for your selling the house, you intended to move back to it? A. Well, yes, I intended to sell. Q. If you had not sold, would you have moved back to the house or did you know whether— A. No, I had intentions of selling it."

This is not an action between the judgment creditor and the person filing the declaration of homestead. It is between the judgment creditor and a bona fide purchaser for value of the property. Mr. Barouh moved to Seattle from California in October, 1948. He learned that the house was for sale, called Mrs. Israel at her parents' home, and she told him to come and see it. He went to the house. She was there. It was completely furnished. As far as he knew, she was occupying it as a home. He made the deal at that time to purchase it. At the time the deed was issued to respondent on November 4, 1948, there was on file a declaration of homestead, valid on its face, executed by Rachel Israel. He was a bona fide purchaser for value. He assumed a real-estate mortgage, on which he paid $3,081.95. He made improvements on the property at an expenditure of $1,846.50. He did not know that Leon Israel claimed any lien on the property until four years later, when Leon attempted to execute on his judgment of October 30, 1948, by levying on this property.

Section 1, chapter 60, Laws of 1929, p. 56 [*cf.* RCW 4.56-.190] provides in part:

"The real estate of any judgment debtor, and such as he may acquire, not exempt by law, shall be held and bound to satisfy . . . any judgment of the supreme or superior court of this state, . . . and every such judgment shall be a lien thereupon to commence as hereinafter provided and to run for a period of not to exceed six years from the day on which such judgment was rendered."

RCW 6.12.090 provides in part:

"Every homestead claimed in the manner provided by law, shall be presumed to be valid to the extent of all the lands claimed exempt, until the validity thereof is contested in a court of general jurisdiction in the county or district in which the homestead is situated."

■ At the time appellant's judgment was obtained, the property in question was not subject to the lien of the judgment because a declaration of homestead, valid on its face, was on file. Appellant had a right to subject this property to the lien of his judgment by contesting the validity of the declaration in a court of general jurisdiction and showing that the declaration was not filed in good faith. However, before any action was taken, the rights of respondents intervened. They purchased the property and made valuable improvements thereon. We are convinced that, under the facts of this case, appellant Leon Israel had no right to make the lien of his judgment effective against the property of respondents. See *Meikle v. Cloquet,* 44 Wash. 513, 87 Pac. 841, wherein we said:

"While the appellant might, during the lifetime of his lien, have subjected the homestead to sale for its excess of value over and above the value allowed by statute by complying with the statutory requirements, yet, he must have exercised this right while the claimants held the land. If he delayed until after the claimants parted with it, whether they conveyed by deed or otherwise, his remedy to sell for even this surplus was lost."

■ Appellant complains that the trial court had no authority to enter the *nunc pro tunc* order correcting the description of the real property awarded to Rachel Israel in

the divorce decree. Rule 7, Rules of Pleading, Practice and Procedure, 34A Wn. (2d) 73, gives the trial court authority to correct clerical mistakes and errors arising from oversight or omission. Such a correction can be made without notice. See Annotation, 14 A.L.R. (2d) 224.

■ Finally, appellant contends that the quitclaim deed executed by Rachel Israel gave to respondent no other title or right than that which she then enjoyed. The *nunc pro tunc* order corrected the description as of October 21, 1948, the date of the interlocutory order. A quitclaim deed is just as effectual to convey the title to real estate as any other deed, and a grantee of a quitclaim deed has the same rights as the grantee of a warranty deed, with the exception that he is given no warranty. *Ankeny v. Clark,* 1 Wash. 549, 20 Pac. 583; *McCoy v. Lowrie,* 44 Wn. (2d) 483, 268 P. (2d) 1003.

The judgment is affirmed.

HILL, DONWORTH, and WEAVER, JJ., concur.