IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80553-3-I |
| | ) | |
| COLIN D. HOFMANN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KAREN M. HOFMANN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — In this dissolution of marriage, Karen Hofmann appeals the trial court determination that a residence is encumbered by approximately $294,166 that she and her former husband, Colin Hofmann, owe to Colin's parents for a down payment loan on that residence. Karen contends that she and Colin have repaid the bulk of the down payment loan from the proceeds of a sale of another house. Because substantial evidence supports the trial court's finding that Karen and Colin have not made any payments to Colin's parents toward the down payment loan, we affirm.

FACTS

Appellant Karen Hofmann and respondent Colin Hofmann married in 2008. In 2018, Colin filed for dissolution of the marriage.

Trial regarding dissolution of the marriage, child support, the parenting plan, and related issues occurred over 10 days in May, June and July 2019.

On August 8, 2019, the trial court issued detailed findings of fact and conclusions of law. The findings and conclusions established the following facts relevant to the issue on appeal. In 2012, Karen and Colin purchased a house at 6669H N.E. Windermere Road (Windermere house) with the assistance of Colin's parents, Betsy and Doug Hofmann (senior Hofmanns). The senior Hofmanns provided a 15 percent down payment on the house. The senior Hofmanns are equal obligors on the mortgage with the parties and are listed as co-owners on the title to the property. All mortgage payments and taxes have been paid by Colin and Karen. Betsy Hofmann testified credibly that her understanding was that the arrangement for the Windermere house was the same as for her other children where she and her husband had loaned a down payment with the expectation of being repaid. The court found that Karen and Colin Hofmann have not made any payments to the senior Hofmanns to pay down the loan. This is the only finding challenged on appeal.

Colin Hofmann was somewhat vague and evasive about his understanding of the terms of his parents' contribution to the Windermere house and their ownership interest. Despite testifying about his frustration about having received no benefit from his co-ownership and work on the previous house he co-owned with his parents, he testified that ownership of the Windermere house was a "new

adventure" and "ideas and details didn't really come up."[1] The court did not find his testimony credible on this issue. Although Douglas Hofmann was called as a witness by Karen, neither party asked Douglas Hofmann, who is an attorney, any questions about his understanding of the transaction and of the senior Hofmanns' interest in the Windermere house.

The court concluded that the parties' interest in the Windermere house was community property and awarded it to Colin. The court further concluded, "Although this court cannot determine the respective interests of the elder and junior Hofmanns, for purposes of the equitable division of assets and liabilities in this case, the court finds that it is equitable to treat the Windermere home as owned by Colin and Karen Hofmann and encumbered both by the mortgage and by a loan obligation to the senior Hofmanns related to the down payment."[2]

The property division chart, attached to the findings of fact and conclusions of law, awarded Colin the Windermere house and listed as a debt regarding the house "less down payment loan owed to Doug & Betsy Hofmann" in the amount of $294,166.[3]

Karen appeals.

<u>ANALYSIS</u>

Karen challenges the amount of the $294,166 debt to the senior Hofmanns for the down payment of the Windermere house. Karen contends that she and

---

[1] Clerk's Papers (CP) at 318.

[2] CP at 320.

[3] CP at 347.

Colin paid back $207,712.64 of this debt to the senior Hofmanns when they sold a house that Colin had bought with his parents before he married Karen, located on 49th Avenue NE (49th Avenue house). It is undisputed on appeal that the senior Hofmanns received a payment of $207,712.64 when the house on 49th Avenue sold. The issue on appeal therefore is narrow: Whether the payment of $207,712.64 to the senior Hofmanns upon the sale of the 49th Avenue house was in repayment of their loan to Karen and Colin for the down payment on the Windermere house.

As an initial matter, Colin contends that we should not address this issue because Karen raises it for the first time on appeal. At trial, the court admitted into evidence the settlement statement for the sale of the 49th Avenue house, which reflects a payment of $207,712.64 to the senior Hofmanns. When questioned by his own attorney about this statement, Colin testified that his parents received $207,712.64. Karen questioned Colin about whether the senior Hofmanns were reimbursed with $207,712.64 of funds from the sale of the 49th Avenue house and whether his parents loaned them money to put down on the Windermere house until they sold the 49th Avenue house. Both Karen and Betsy Hofmann testified that Karen and Colin were going to repay the senior Hofmanns for the down payment loan on the Windermere house.

The trial court's findings and conclusions surrounding this issue, cited at length above, also reflect that the issue was at least generally raised before the trial court. The record does not reflect that Karen offered the trial court an exact

4

amount that she believed she and Colin still owed the senior Hofmanns for the down payment loan. But the record overall is sufficient for us to review the issue.

"A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion."[4] "'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'"[5]

## I. Trial Court's Finding re: Loan Payments

Karen challenges the trial court's finding that "Karen and Colin Hofmann have not made any payments to the elder Hofmanns to pay down the [Windermere] loan."[6] Karen contends that substantial evidence does not support this finding. We disagree.

If a party challenges a finding, we determine whether substantial evidence supports it.[7] Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.[8] We then determine whether the findings of fact support the

---

[4] In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (citing In re Marriage of Kraft, 119 Wn.2d 438, 450, 832 P.2d 871 (1992)).

[5] Id. (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

[6] CP at 318.

[7] In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002).

[8] Id.

trial court's conclusions of law.[9] We do not review credibility determinations, which we leave to the trier of fact.[10]

The single payment Karen contends she and Colin made to the senior Hofmanns on the Windermere down payment loan was the $207,712.64 payment to the senior Hofmanns when the 49th Avenue home sold. As evidence this payment was in reimbursement of the Windermere down payment loan, Karen points to the settlement statement for the sale of the 49th Avenue house. The HUD-1 settlement statement for the 49th Avenue house lists as a deduction in amount due to seller, "Payoff of second mortgage loan DOUGLAS & ELIZABETH HOFMANN" in the amount of $207,712.64.[11] The supplemental page to the settlement statement reflects the same "payoff of second mortgage loan," payment to Douglas and Elizabeth Hofmann for the same amount.[12]

There is no evidence on the face of the settlement statement connecting the $207,712.64 payment in any way to the Windermere down payment loan.

Nor was there any other evidence at trial that the $207,712.64 was a repayment for the Windermere down payment loan. Neither of the senior Hofmanns were questioned about the $207,712.64 payment. Karen did not testify regarding the $207,712.64 payment. The trial court found Colin's "somewhat

---

[9] Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999) (citing Willener v. Sweeting, 107 Wn.2d 388, 393, 730 P.2d 45 (1986)).

[10] In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999) (citing In re Marriage of Rich, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996)).

[11] Ex. 580.

[12] Id.

vague and evasive" understanding of his parents' contribution to the Windermere house and their ownership interest was not credible on this issue.[13] We do not review credibility determinations, which we leave to the trier of fact.[14] In any event, nothing about his testimony supports an inference that the $207,712.64 was repayment of the Windermere down payment loan.[15]

---

[13] CP at 318.

[14] Greene, 97 Wn. App. at 714.

[15] The following was Colin's testimony on the issue when Karen questioned him at trial:

Q:  And so is it true we didn't have the money to put down on the 6669 Windermere home because we had not yet sold the 4745 home to obtain the funding?

A:  I'm not sure, Karen.

Q:  Okay.  Is it true that your parents loaned us they money to put down on the 6669 Windermere home until we sold the 4745 home?

A:  No.

Q:  Is it true they put their name on the title because they loaned us the money?

A:  Their name was on the title because we couldn't get approved by ourselves, so we decided to go after it as a group.  The terms of that arrangement were unclear.

. . . .

Q:  And is it true all excess funds for the sale of the 4745 home reimbursed Douglas and Elizabeth Hofmann?  See No. 505.

A:  I don't know the exact terms of it, but . . . since when this house was purchased, I don't recall what they put down, but they put down a large portion.

Karen argues that any mortgage the senior Hofmanns had on the 49th Avenue house was extinguished when they quitclaimed the 49th Avenue house to Colin days before he married Karen in 2008. Thus, Karen contends the only loan remaining at the time the 49th Avenue house was sold was the Windermere down payment loan, so the $207,712.64 must have been payment on that loan. "'It has long been the rule that a valid quitclaim deed passes all the right, title, and interest which the grantor has at the time of making the deed and which is capable of being transferred by deed, unless a contrary intent appears.'"[16]

The quit claim deed states, "THE GRANTORS, Douglas A. Hofmann and Elizabeth B. Hofmann, husband and wife, for the purpose of exiting title, and for no other consideration, hereby convey and quitclaim to GRANTEE, Colin Hofmann, a single man, all of their right, title, and interest in and to the following described real estate."[17] The ambiguous purpose of "exiting title, and for no other consideration" does not suggest the quitclaim deed was intended to extinguish any loan or mortgage the senior Hofmanns may have had on the 49th Avenue house.

---

Q: So is it true that Douglas and Elizabeth Hofmann were reimbursed 207,000 -- $207,712.64?

A: That's what it says.

Report of Proceedings (RP) (June 3, 2019) at 973-74.

[16] Newport Yacht Basin Ass'n. of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 67, 277 P.3d 18 (2012) (emphasis added) (quoting McCoy v. Lowrie, 44 Wn.2d 483, 486, 268 P.2d 1003 (1954)).

[17] Ex. 579.

Neither party points to testimony from any witness at trial regarding the intent of the quitclaim deed. Karen argues that the senior Hofmanns intended the quitclaim deed as a wedding gift to Colin but points to no evidence in the record to support this alleged intent. And there is no evidence explaining or suggesting that a HUD-1 settlement statement for one house including, under "Reductions In Amount Due To Seller," a "payoff of second mortgage loan DOUGLAS & ELIZABETH HOFMANN" was a reference to a second mortgage loan on another property unrelated to the sale that was the subject of the HUD-1 settlement statement. The settlement statement's reference to a second mortgage of $207,712.64 supports a reasonable inference that the amount was a second mortgage on the 49th Avenue house.

Substantial evidence supports the finding that Karen and Colin have not made any payments to the senior Hofmanns to pay down the loan on the Windermere property.

Because we affirm the trial court's finding that Colin and Karen have not made any payments to the senior Hofmanns on the Windermere down payment loan, we reject Karen's argument that listing the debt in the full amount of $294,166 was a clerical error. An error is clerical when the judgment does not embody the court's intention.[18] Listing the amount of the down payment debt as $294,166 embodied the trial court's intent to divide the parties' community property

---

[18] Presidential Estates Apartment Assocs. v. Barrett, 129 Wn.2d 320, 326, 917 P.2d 100 (1996).

equally between them. The court did not abuse its discretion in awarding Colin the Windermere house subject to an encumbrance in favor of the senior Hofmanns in the amount of $294,166.

II. Attorney Fees

Karen and Colin both request that we award them attorney fees on appeal pursuant to RCW 26.09.140, but on the showing made we decline to make an award to either based on need and ability to pay. Karen also refers to RAP 14.2, and RAP 18.1, but she has not prevailed on appeal. We decline to award Karen attorney fees.

Colin also requests attorney fees on appeal on the basis that Karen was intransigent. Colin has not shown that Karen was intransigent. We decline to award Colin attorney fees.

We affirm.

_____

WE CONCUR:

_____      _____
                                Mann, C.J.