H. C. WHITE, Adm'r, et al. vs. THOMAS TUCKER.

1. EJECTMENT:  *Mesne profits. Interest on purchase money.*
  The interest on the money paid by an evicted vendee, and the mesne profits of the land while in the hands of such vendee, are intended by law as equivalents of each other, and that where there has been an acquittance of the one, the other cannot be recovered.

2. VENDOR AND VENDEE:  *By bond for title. Relations thereof.*
  As between vendor and vendee by title bond the relation of trust exists; that in the case at bar the agreement proved between the parties establishes the relation of trust, and that the statute of limitations did not commence to run until the termination of the ejectment suit.

3. SAME:  *Evidence.*
  It is not competent to prove by parol a new promise, to save the bar of the statute of limitations, but it is competent to prove by parol the fiduciary relations that may exist between the parties, in order to avoid the bar of the statute.

ERROR to the Circuit Court of *Leake* County.

Hon. W. B. CUNNINGHAM, Judge.

This was an action by Tucker against White as administrator of Huntington, deceased, for breach of the conditions of title bond for land. Tucker proved eviction of himself, and had verdict and judgment for the $700 of purchase money originally paid by him, and interest thereon, aggregating $1,414. It was disclosed on the trial that Tucker had paid no mesne profits to the true owner when evicted by title paramount, it having been expressly agreed between himself and the owner that he should pay none, and this agreement was embodied in the judgment in ejectment under which he was evicted. Tucker enjoyed possession of the land for many years. It

10

also appears that as early as 1858 Tucker and his vendor, Huntington, had notice of the paramount title, and that suit for the land was about to be instituted. Huntington thereupon notified Tucker that he would not receive any more money from him, nor deliver a deed, until the litigation was ended, but that he, being an attorney, would defend the suit. Before the termination of the suit Huntington died. His administrator, being sued by Tucker, pleaded the statute of limitations, setting up that his intestate's covenants had been broken upon his refusal, in 1858, to receive any more payments or to make a deed, and that plaintiff's right of action had accrued then, and, more than seven years having elapsed, the right of action was barred. Plaintiff introduced evidence to avoid this plea, which was objected to by defendant as being an attempt to save the bar by proof of a parol promise.

J. A. P. Campbell, for plaintiff in error, insisted:

1. That the measure of damages for a breach of the covenant of warrantee of title, where there are no special circumstances to vary the rule, is the purchase money and interest. That the reason for allowing interest is to counterbalance the claim for mesne profits which the owner of the paramount title may recover, and where the vendee is not liable for mesne profits he cannot recover interest of his vendor, the true owner. Rawle on Cov. for Title, p. 93, et seq.; Guthrie v. Pugsley, 12 Johns., 126 ; Patterson v. Stewart, 6 Watts & Serg., 528 ; Kyle v. Fauntleroy, 9 B. Mon., 620 ; Williams v. Beeman, 2 Devereux, 485 ; Rich v. Johnson, 1 Chandler (Wis.), 20 ; Caulklin v. Harris, 9 Johns., 324 ; Bennet v. Jenkins, 13 Johns., 50 ; Ela v. Card, 2 N. H., 178 ; Clark v. Parr, 14 Ohio, 118 ; Lawless v. Collier, 19 Mo., 486 ; Spring v. Chase, 22 Me., 502 ; Sedgwick on the Measure of Damages (5th ed.), p. 174 ; Staats v .Ten Eyck's Ex'rs, 3 Caines, 111 ; Baxter v. Byers, 13 Barb. (N. Y.), 267 ; Harding v. Larkin, 41 Ills., 413 ; Cox v. Henry, 32 Penn. St., 18 ; Brown v. Dickerson, 12 Penn. St., 372 ; Wade v. Comstock, 11 Ohio St., 71 ; Flint v. Steadman, 36 Vt., 210.

2. The rule is the same in actions by the purchaser against the vendor for failure to convey. Fletcher v. Burton, 6 Barb., 646 ; Peters v. McKeon, 4 Denio, 546 ; vide opinion of Sedgwick in his Measure of Damages, p. 182, note.

The real object of the courts is to give compensation for what is actually lost. Ib., p. 185. Interest "is only given to cover the value of the mesne profits that is supposed the grantee may be obliged to refund to the true owner." Sedg., p. 188, note.

[Reporters find no brief in the record for defendant in error.]

CHALMERS, J., delivered the opinion of the court.

The action was by Tucker against White as administrator of Huntington, for breach of the conditions of a title bond for land. Tucker proved eviction of himself, and had verdict and judgment for the $700 of purchase money paid originally by him, and interest thereon, aggregating $1,413.98, the interest thus doubling the recovery. The recovery of the interest is the principal error relied on.

It was disclosed on the trial that Tucker had paid no *mesne profits* to the true owner when evicted by title paramount, it having been expressly agreed between himself and said owner that he should pay none, and this agreement having been embodied in, and made a part of, the judgment in ejectment under which he was evicted. Having thus enjoyed possession of the land for many years, and being acquitted of all demands for the use and occupation thereof, can he recover from his vendor interest on the purchase money paid by him ?

The question is one of first impression in this state, but it seems abundantly well settled elsewhere. It is held that interest on the money, and the mesne profits of the land, are intended by law as the equivalent of each other, and that where there has been an acquittance of the one, the other cannot be recovered.

We concur in these decisions. Rawle on Cov. for Title, 93, *et seq.* ; Guthrie v. Pugsley, 12 Johns., 126 ; Patterson v.

Stewart, 6 Watts & Serg., 528 ; Kyle v. Fauntleroy, 9 B. Mon., 620 ; Williams v. Beeman, 2 Devereux, 485 ; Clark v. Parr, 14 Ohio, 118 ; Flint v. Steadman, 36 Vt., 210.

The other errors assigned relate to questions arising on the pleadings, which were exceedingly and unnecessarily protracted and complicated. The most important are those growing out of the plea of the statute of limitations and the introduction of evidence intended to avoid it.

It appears that as early as 1858 Tucker and his vendor, Huntington, had notice of the paramount title and that suit for the land was about to be instituted. Huntington therefore notified Tucker that he would not receive any more money from him, nor deliver a deed, until the litigation was ended, but that he, Huntington, who was an attorney, would defend the suit for Tucker, and they would settle all matters at the end of the litigation.

This arrangement was carried out, but before the final settlement could be had Huntington died.

His administrator, being sued by Tucker for the purchase money which he had paid in cash at the time of the purchase, pleaded the statute of limitations, setting up that his intestate's covenants had been broken upon his refusal in 1858 to receive any further payment or make deed ; that plaintiff's right of action had accrued then, and that, more than seven years having elapsed since that time, the right of action was barred. He objected to the introduction of the testimony as being an attempt to save the bar by proof of a parol promise.

It was held in Wilson v. Joy, 3 George, 233, that a right of action accrued to the purchaser of a slave, for false and fraudulent representations as to the title, from the time of the representations, and that the statute would commence to run from that date, although there was no actual loss of the slave for some time afterwards. It was held in Johnson v. Pyles, 11 S. & M., that an attorney's right to sue for his fee accrued, in the absence of any express contract, upon the rendition of the judgment, and that the statute would commence to run

against him from that time, although the collection of the money on the judgment was enjoined for several years thereafter. In the first case, however, it was said that, if any relation of trust existed between the parties, the statute would only begin to run from the discovery of the falsehoods of the representations. And the second cause was rested upon the ground that the attorney did not act in the injunction suit, but his relations with his client terminated with the recovery of the judgment.

In the case at bar we think that the agreement proved between Huntington and Tucker established a relation of trust between them, and at least had the effect of continuing that relation of trust which, this court has more than once said, subsists between the vendor and vendee of land by title bond, and that therefore the statute did not commence to run until the termination of the ejectment suit.

The testimony was properly admitted, not for the purpose of proving a new promise by parol, but to establish the fiduciary relation.

For the error in the rendition of verdict, and judgment for the interest on purchase money, the case is reversed and remanded.

Mr. Justice CAMPBELL, having been of counsel, takes no part in this decision.