# Gunter *v.* Beard.

*Bill in Equity to enforce Vendor's Lien on Land; Cross-Bill for Set-off and Recoupment of Damages.*

1. *Rents and profits, and interest on purchase-money.*—Where the purchaser of land is placed in possession, but is afterwards evicted under title paramount, he is entitled to recover interest on the purchase-money paid, because he is liable to his evictor for the rents and profits during his possession, and they are regarded as the legal equivalent

[Gunter v. Beard.]

of interest; but, not having paid the purchase-money in full, and being afterwards restored to the possession by his vendor, he can not repudiate his liability for interest on the notes for the purchase-money during the time he was in possession before eviction.

2. *Recoupment of special damages by purchaser, against claim for purchase-money.*—When the purchaser of land is sued for a balance of purchase-money due, he can not, under the pleas of set-off and recoupment, claim damages on account of losses sustained by him in breaking up his business elsewhere when he moved into possession of the land, and again when he was compelled to abandon the possession under a temporary eviction by title paramount, which was specially mentioned in his bond for title, such damages being too remote, uncertain, and speculative; and especially when he might have bought in the outstanding incumbrance at less than the balance due.

APPEAL from the Chancery Court of Marshall.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 16th May, 1889, by Arthur H. Beard against W. M. Gunter, John H. Gunter, and others; and sought to enforce a vendor's lien on a tract of land, for an alleged balance of purchase-money due and unpaid. The contract for the sale of the land by complainant to said Gunters was made on the 24th March, 1883, the stipulated price being $4,891.66, of which only $10 was paid in cash, and the purchasers' three notes given for the balance, for $500, $1,000, and $3,381.66, respectively. The notes were under seal, and were in the following form: "We promise to pay Arthur H. Beard the sum of $500" (or $1,000, or $3,381.66), "it being the balance of the consideration and price for his interest in Pine Island, and also in the lands which his father, Arthur C. Beard, bought of P. M. Bush and Spencer Clack, and which lies on the north side of the Tennessee river in Marshall county, Alabama; which said sum is to be paid, with interest from this date, when the said Arthur H. Beard shall make, execute and deliver to us, our heirs or assigns, a good and sufficient deed for said lands, in accordance with the terms and conditions of his title-bond relating thereto, of even date with this obligation. Witness our hands and seals," &c.

The title bond was conditioned as follows: "Whereas I have this day bargained and sold unto the said W. M. Gunter and John H. Gunter that tract, portion and quantity of land in Pine Island devised to me by the last will and testament of my father, Arthur C. Beard, and containing 95 5-6 acres, more or less, and also all my right, title, interest and claim in and to the land mentioned in said will, and described as follows," namely, the land bought by A. C. Beard from P. M. Bush and Spencer Clack, "devised in and by the will of said Arthur C. Beard to me and my brothers, James P. and Silas P. Beard, for the sum of $4, 891.66," &c. "*And whereas* there are cer-

tain debts still due and liabilities of the estate of said Arthur C. Beard; *and whereas* one W. T. Beard, a son of said Arthur C. Beard, has filed a bill in the Chancery Court of Marshall county for the purpose of setting aside and annulling the will of said Arthur C. Beard; *and whereas* it is alleged that I have executed a mortgage on my interest and portion of said land in Pine Island to the Wilson Sewing Machine Company, the validity and binding effect of which I do not admit, and it is not intended or desired that the said W. M. Gunter and John H. Gunter shall pay any more of the said consideration of said lands than ($10) as above expressed and set forth, until all the debts and liabilities of said estate are fully paid off and discharged, and also all suits and controversy as to the will of said Arthur C. Beard are fully ended and determined, and also all claims and demands, liens and incumbrances by reason of said mortgage are fully removed and discharged; *and whereas*, in accordance with the above premises, the said W. M. and John H. Gunter have given their obligations, of even date herewith, to pay me the sum of $4,881.66, with interest from date, being the balance of the price and consideration for said land, upon the payment of the debts of said estate, and the ultimate establishment of the will of said Arthur C. Beard: *Now*, if said W. M. and John H. Gunter shall well and truly pay and discharge said obligations when the same shall become due and payable, and the said A. H. Beard shall well and truly make, execute and deliver a deed in fee simple for said land, free from all incumbrances, and with warranty of title, to the said W. M. and John H. Gunter, then this obligation to be void," &c.

At the time this contract was made, the lands were in the possession of tenants under a lease, which did not expire until about the close of the year 1885; but the tenants attorned to the Gunters, and the latter collected the rents during the years 1883–4–5. In the meantime Jas. P. and Silas P. Beard, as executors of the last will and testament of Arthur C. Beard, had filed a bill in the Chancery Court of Marshall, and obtained a decree subjecting the land to sale for the payment of debts; and at the sale under that decree, they became themselves the purchasers. The Gunters surrendered possession to said executors as purchasers, and the latter continued in possession for nearly two years, when, as the bill alleged, the complainant redeemed from them. On the 5th March, 1888, a settlement being had between the complainant and W. M. Gunter, the latter paid the full amount of the several notes, without interest, and complainant executed to him a conveyance of the lands with covenants of warranty; and at the same time, as

[Gunter v. Beard.]

part of the same transaction, a written instrument was signed by said W. M. Gunter, A. H. Beard, and S. P. Beard, as follows: "*Whereas*, on the 24th March, 1883, A. H. Beard did bargain and sell to W. M. Gunter and John H. Gunter certain lands in said county, on certain conditions fully recited in said Beard's title-bond to them of that date, which is hereby referred to and made a part of this agreement; *and whereas* said Beard now finds himself in a condition to comply with the terms of said title-bond; *and whereas* said W. M. Gunter claims and insists that the said John H. Gunter has heretofore relinquished to him all the interest of the said John II. in and to said lands particularly described in said title-bond, by virtue of said sale above referred to: *now*, therefore, this instrument witnesseth, that the said W. M. Gunter hereby, for and in consideration that the title to said lands is made to him individually, expressly assumes all the burdens of said purchase that could or ought of right belong to said W. M. and John H. Gunter severally and collectively, and further promises and binds himself, his heirs, executors and administrators, to hold the said A. H. Beard harmless against any action which the said John H. Gunter, his heirs," &c., "might institute against said A. H. Beard for not making the deeds to said lands to said W. M. and John H. Gunter, as required by said title-bond. *And whereas*, furthermore, there is a controversy between the said A. H. Beard and W. M. Gunter touching the interest on the purchase-money notes for the years 1883–4–5, or for the use and occupation of said lands for said years, but they are desirous of settling this sale as far as the same can be done agreeably to both of said parties; *Now*, this instrument further witnesseth, that in turning over to said W. M. Gunter the original purchase-money notes, without receiving any interest due thereon, or any remuneration from him for the use and occupation of said lands for said three years by said W. M. and John H. Gunter, that the said Beard does not waive any of his rights or S. P. Beard's right to collect from said Gunter by suit at law or in equity, or by arbitration, the above referred to interest, or the use and occupation of said land for said years; the said W. M. Gunter binding himself particularly to be responsible to said Beards for any judgment, decree or award that may be hereinafter rendered against either him or said John H. Gunter; said question of interest, or use and occupation of land, being expressly left for future adjustment by the parties hereunder signed, this 5th March, 1888."

Beneath this, and before the signatures, the following is added, said to be "interlined on lines 4 and 5 of this page be-

[Gunter v. Beard.]

fore signing: "The right to interest or rents, referred to in this agreement, said W. M. Gunter claims should be set off or extinguished by the damages and loss he has sustained by being deprived of a[ll] of the land during a part of the time since said purchase; and said questions of interest and rents to Beards, and damages to Gunter, are expressly left open for future settlement and adjustment."

The bill was filed to enforce this claim for interest, as part of the original purchase-money for the land. Silas P. Beard and James P. Beard, who, as executors of the will of Arthur C. Beard, had sold the land under a decree in chancery, becoming themselves the purchasers at their sale, were joined with the Gunters as defendants to the bill; and it appeared that each of them, by deed dated March 3d, 1888, had conveyed said lands, or their one-third interest therein, to said W. M. Gunter, on the recited consideration of $4,881.66. A joint answer was filed by the Gunters, in which they admitted their original purchase of the land from Arthur H. Beard, but alleged that said contract was abandoned when they were dispossessed under the decre subjecting the land to sale at the suit of the executors; denied that the complainant ever redeemed from the executors as purchasers, and alleged that the executors, after the expiration of the statutory period allowed for redemption, offered to sell the land to them for the amount of the original notes given to A. H. Beard; that John H. Gunter refused to become a party to any agreement whatever, and W. M. Gunter refused to purchase from the executors unless Thos. A. Street, a friend of all the parties, would conduct all the negotiations between them, and undertake to have all incumbrances removed and a good title conveyed to said Gunter; that Street undertook the negotiations, and a written agreement was executed between him and Gunter, under which the latter deposited $1,000 in bank to await the result of the negotiations; that Street procured a settlement and discharge of all the incumbrances, and the stipulated price ($4,881.66) was paid over by said Gunter so soon as he obtained conveyances from the executors and Arthur H. Beard. The respondents insisted that this was a new contract, with which John H. Gunter had no connection, and which involved no question of interest due under the former contract; and they further insisted, by answer and cross-bill, that if the question of interest was involved, they were entitled to claim a set-off, or recoupment of damages, on account of special losses sustained, as shown by the extract from the answer which is copied in the opinion of the court.

The written agreement between Gunter and Street, which

[Gunter v. Beard.]

was made an exhibit to Street's deposition, is dated December 2d, 1887, and in these words: "W. M. Gunter agreed to deposit $1,000 with Jordan, Manning & Co., subject to command of T. A. Street; and if said Street used said money, he is responsible to said Gunter for the same, without [unless?] he furnishes to said Gunter, or the same is furnished for him to said Gunter, the deed of A. H. Beard and wife to said Beard's interest in Pine Island, as formerly sold by him to said Gunter, together with a quit-claim to said land to said Gunter by Jas. P. and S. P. Beard, and has the mortgage on said property of the Wilson Sewing Machine Company, to-wit, on said Beard's interest in Pine Island and the lands on the north bank belonging thereto, marked satisfied on the records of Marshall county, together with the notes of said Gunter executed to said Beard for the purchase of said lands; then the said Street shall not be responsible for said $1,000. But, before receiving said deeds, renunciation, &c., referred to, said Gunter must pay to them entitled thereto the full amount of the purchase-money for said land, as heretofore agreed between him and said Beard, less the $1,000 above referred to. But it is expressly agreed that in this arrangement it is not proposed to do, nor is it to be done, to settle the question whether Gunter shall pay for use and occupation of said lands for the *two* [three?] years that he cultivated the same, or whether he is legally liable for interest on said notes; the question [of liability?] for damages or interest being expressly left for future litigation."

The deposition of W. M. Gunter was taken in his own behalf, and to it were appended, as exhibits, the three deeds executed to him by Arthur H., Jas. P. and Silas P. Beard, respectively. Each of the deeds recited the same consideration, the present payment of $4,881.66; but the deed of Arthur H. Beard and wife was dated February 17th, 1888, and contained no covenants of warranty, while each of the others was dated March 3d, 1888, and contained full covenants of warranty.

On final hearing on pleadings and proof, the chancellor rendered a decree for the complainant, and refused to allow the set-off claimed by Gunter; and this decree is here assigned as error.

BROWN & HOLLIDAY, for appellant, cited *Cooper v. McIlwain*, 58 Ala. 300; 6 Wait's A. & D. 719, § 4; Washb. R. P. 428; 68 Ill. 328; 41 Texas, 472; 5 Hill, N. Y. 599; 6 Barb. 165; 3 Gilm. Ill. 162; *Lett v. Brown*, 56 Ala. 550; *Chapman v. Lee*, 55 Ala. 616; *Houston v. Hilton*, 67 Ala. 374; 1 Rawle,

[Gunter.v. Beard.]

14; 50 Penn. St. 513; *Hooper v. Armstrong*, 69 Ala. 343; *Wyatt v. Garlington*, 56 Ala. 576; *Hughes v. Hatchett*, 35 Ala. 539; Waterman on Set-off, 581, §§ 564–66.

LUSK & BELL, R. C. BRICKELL, and SEMPLE & GUNTER, *contra*, cited *Knox v. Anderson*, 20 Ala. 156; *Holley v. Younge*, 27 Ala. 203; *Martin v. Wharton*, 38 Ala. 637; *Holmes v. Richardson*, 67 Ala. 577; *Tobin v. Bell*, 61 Ala. 125; Waterman on Set-off, 588–9, 598.

McCLELLAN, J.—We shall not enter upon a discussion of the evidence in this case. It will suffice to say that it entirely satisfies us of the truth of the allegations of the bill as to the terms of the contract entered into in the year 1883, and as to that being the only contract at any time made between the parties. The most cursory examination of the documentary evidence demonstrates this, and the writings are corroborated by the preponderance of the oral testimony. There was never in fact any change or modification of the contract as first made. The deed, it is true, was executed to W. M. Gunter, instead of W. M. and John Gunter, as originally contemplated and stipulated; but this was done in accordance with some arrangement between them, in which the complainant had no concern, except to be assured of his own safety in so doing; and to this end, he was expressly indemnified by W. M. Gunter. That there was no agreement to forego any part of the original debt and interest, except that part of the latter accruing for the years during which the defendants were kept out of possession, is clearly shown by the memorandum, entered into when the principal was paid and the notes surrendered, to the effect that the right of complainant to the interest on the purchase-money, for the years 1883, 1884, and 1885, was in no manner to be taken as waived or affected by the surrender of the evidence of the debt, but that Beard might thereafter assert any and all rights he theretofore had to enforce the payment of such interest, &c.

Thr case presented, therefore, is this: Beard sold to the Gunters the tract of land in question, and put them in possession, under a bond for title, in March, 1883. They paid only ten dollars of the purchase-money, and executed their notes for the balance, with interest from date. These notes were to be paid, according to the stipulations of the title-bond, when certain infirmities of Beard's title should be cured, and he thereby be put in position to pass good title to the land into the purchasers. These infirmities were specifically set forth in the bond, and resulted from (1) the liability of the

[Gunter v. Beard.]

land to be subjected to Beard's proportion of the debts of his father's estate, the land having come to him under the will of his father, charged with debts of the estate, and the estate not having been settled; (2) the pendency of a proceeding in contestation of said will, and (3) an outstanding mortgage of the land executed by Beard to a sewing-machine company, the validity of which he disputed. On bill filed by the executors of the will of Beard, Sr., against A. H. Beard, the sewing-machine company, and the Gunters, the land was subjected to sale, and sold in 1886, for the payment of $2,280, Beard's proportion of liability for the debts of the estate—this sum being less than half the price agreed to be paid for the land by the Gunters. At this sale, the executors purchased, and soon after demanded and received possession from the Gunters. Early in 1888, the sewing-machine company's mortgage having been satisfied, and the bill to contest the will of Beard, Sr., having been dismissed, A. H. Beard redeemed the land from the executors; and being now in the position contemplated and provided for in the title-bond, executed conveyance to W. M. Gunter, received from him the principal of the notes under the agreement as to interest to which we have alluded, put him in possession, and then filed this bill to enforce a vendor's lien for that balance of the purchase-money constituted of the interest on the notes for the years 1883, 1884 and 1885, during which defendants, as we have seen, were in possession, and received the rents and profits of the land.

The defense relied on against the case thus made by the bill and evidence is, that the purchasers suffered special damages in consequence of the eviction and deprivation of possession for the years 1886 and 1887, these damages resulting from, or growing out of the facts, it is alleged, that they, or W. M. Gunter, had closed out a lucrative business elsewhere, changed his residence, involving the disposition "of many things at a sacrifice," had made certain expenditures, looking to the occupation and use of the land for those years, and by way of preparation to that end, which proved abortive, and a loss to them, because they were not allowed to continue in possession. These matters are not, in our opinion, available in set-off or recoupment against the demand for the purchase-money, or, what is the same thing, for the interest on the purchase-money for the years 1883, 1884 and 1885. The doctrines applicable to the measure of damages, in actions for breach of warranty, where the vendor has paid the purchase-money in full, furnish, by analogy, the true rule on the subject we are considering. The general rule, in the class of actions referred to, is, that the vendee, upon eviction by title para-

[Gunter v. Beard.]

mount, may recover from his vendor the purchase-money paid, with interest.—2 War. on Vendors, 1007. But the measure of damages is thus made to embrace interest, *because* the vendee is responsible generally to the evictor for rents and profits. Therefore, in exceptional cases, where rents and profits are not recovered or recoverable from him, his recovery against his vendor is limited to the purchase-money without interest, the use of the land without accountability being compensatory for the loss of the use of the money.—*Hutchins v. Rountree,* 77 Mo. 500; *Stebbins v. Wolf,* 33 Kan. 765; *White v. Tucker,* 52 Miss. 145; 2 Suth. on Dam. 300, and citations. These vendees were not answerable to their evictors for rents and profits, and, under the principle just announced, had they paid the purchase-money in full, and brought suit on the covenant of warranty after eviction, they could have recovered no interest. For the same reason, having had the land and also the purchase-money, they can not be allowed now, while retaining the rents which belonged to them under their contract with Beard, to also retain the interest which, under that contract, belonged to the complainant.

The true measure of damages, where the vendee has been evicted, and kept for a time only out of the possession of the land, resuming its occupancy and enjoyment, as in this case, when the defect in his vendor's title has been cured, is the value of the estate for the period of dispossession. Thus, where the grantor undertook to sell and convey the fee, but there was a life-estate which did not pass by the deed, it was held that, by reason of the breach of the covenant of warranty in the deed, for which the note was given, the maker had a right, in a suit thereon, to recoup the value of the estate for the time during which he was deprived of its enjoyment because of the existence of the life-estate.—*Christy v. Ogle's Ex'rs,* 33 Ill. 295. On like principle, it is held that, where land is sold with warranty of title, and at the time the land has been rented by the vendor's agent without his knowledge or direction, and the vendee is thereby delayed in getting possession, the measure of damages is the fair rental value for the lost time ; and *prima facie,* the rent agreed to be paid by the tenant is the fair rental value.—*Moreland v. Metz,* 24 W. Va. 119. In the case at bar, the value of the land for the two years during which the defendants were deprived of its enjoyment, was the rents and profits for those years, which, presumably, as well as upon the preponderance of the testimony, were equivalent to the interest on the purchase-money for that period ; and it seems, so far as the rents and profits were concerned, the claim of the

[Gunter v. Beard.]

vendees was settled on this basis by agreement of parties, the vendor abating his demand to the extent of two years interest.

Aside from the loss of the rents and profits, the damages sought to be recouped against the purchase-money are laid in the cross-bill as follows : "And respondents were further damaged in this, that in the Spring of 1886 Wm. M. Gunter was engaged in a lucrative business at Bridgeport, Alabama, and he closed out said business, and purchased horses and mules and other stock and farming implements, and hired farm hands, and took them down on the land in suit; built a residence on said lands for himself and family, and moved his family down on said lands, and left his home, where he sold many things at a sacrifice, with a view of changing his place of business, and with a view of farming on the lands in suit. He put his hands to work, preparatory to making a crop, and remained there some time engaged in improving and building stables, houses, &c., and afterwards was ousted, . . . and compelled, for want of employment, to return and move back to Bridgeport; in all of which respondents were largely damaged in a sum not less than one thousand dollars." There are several reasons why these alleged damages could not be recouped against the purchase-money. They are speculative, uncertain and remote, such as could not have been in the contemplation of the parties. They arose, if they exist at all, from conduct of the defendants, and expenditures and losses incurred by them in moving on the land, and preparing for its cultivation, while a bill was pending against them and others which they knew must result in its sale and their eviction, unless they paid off the incumbrance to satisfy which the sale was to be made. Indeed, it may be that all these expenditures and losses were incurred after the decree of sale had been entered up. Moreover, the title-bond itself advised them of this incumbrance, as one that had to be removed before they could get title. Then, too, they might have fully and amply protected themselves against eviction, and avoided all the damages they now seek to recover, by paying off the incumbrance, and claiming a credit for its value on the purchase-money notes.—Waterman on Set-off, §§ 571; 2 Brick. Dig. 513, §§ 103-4; *Holley v. Younge*, 27 Ala. 203 ; *Anderson v. Knox*, 20 Ala. 156; *Martin v. Wharton*, 38 Ala. 637; War. on Vendors, pp. 943 *et seq.*

Of course, if, during the adverse occupancy, the estate had been damaged by the destruction of timber, the removal of improvements, and the like, the vendees might have recouped such damages against the claim of the vendor; but nothing of this sought is averred in the answer and cross-bill.— *Weakland v. Hoffman*, 50 Pa. St. 513.

[Wiley v. Carlisle.]

The decree below properly disallowed the damages claimed by the defendants, and directed the register to state an account of the balance of purchase-money due. The register's report was not excepted to, and we will not enter upon inquiry as to the correctness of the amount he found to be due.

Affirmed.