[No. 7678.   Decided May 13, 1909.]

## BABCOCK, CORNISH & COMPANY, *Respondent*, v. DONALD URQUHART *et al.*, *Appellants.*[1]

ELECTION OF REMEDIES—ACTS CONSTITUTING—SUBSEQUENT SUITS—IRREVOCABILITY. An election of remedies, once made, is irrevocable; and where a plaintiff has by his first action elected the remedy of damages, and upon dismissal, commenced a second suit attempting to elect another remedy, and upon dismissal thereof commenced a third suit for damages, the defendant cannot in the last suit set up the second action as an election of an inconsistent remedy; since the election of damages was irrevocably made in the first instance, and the doctrine has no application where the remedy shown is not available.

SAME—OPTION AS TO ELECTION—WAIVER. After an election of remedies is once made, it is fixed, and does not depend upon the subsequent choice of the parties, except as it is optional to waive or plead it.

SAME—PLEADING—GENERAL DENIAL IN REPLY—EVIDENCE ADMISSIBLE. Where an election of the remedy of damages was made by

[1]Reported in 101 Pac. 713.

plaintiff's first action, which was dismissed, and plaintiff attempted to elect another remedy in a second action which was also dismissed, in a third action for damages, in which the defendant affirmatively pleaded the second action as an election of an inconsistent remedy, the plaintiff may, under a general denial in his reply, show the original election of the remedy of damages by the first action without having specially pleaded the first suit.

EVIDENCE—PAROL TO VARY WRITING—WATER RIGHTS—CONTRACT OF SALE—CERTAINTY. A written contract of sale requiring the vendor to defend the water right title to meadow lands and to convey one cubic foot of water per second for each hundred acres of meadow lands, there being 230 acres, is not so uncertain as to permit of evidence of an oral contemporaneous understanding to the effect that the grantors were not required to furnish that amount of water; and failure in this respect would be a breach of the contract.

VENDOR AND PURCHASER—CONTRACT—BREACH—DEFECTS IN TITLE. The evidence is sufficient to sustain findings that a vendor breached a contract by reason of defects in his title, where it appears that he admitted defects which he unsuccessfully attempted to cure.

VENDOR AND PURCHASER—REMEDIES OF VENDEE—FAILURE OF TITLE—MEASURE OF DAMAGES. The measure of damages on breach of covenant as to title, is the purchase price paid, and expenses incurred in pursuance of the contract, with interest, without any sum for loss of profits, where, upon failure of the vendor's title, there were no fraudulent representations as to the state of the title, which was to some extent known by the vendee, and the vendors acted in good faith and attempted to perfect the title.

Cross-appeals from a judgment of the superior court for Spokane county, A. G. Kellam, Esq., judge *pro tempore*, entered April 17, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Merritt, Oswald & Merritt*, for appellants.
*Cullen & Dudley*, for respondent.

PARKER, J.—By this action plaintiff seeks to recover damages from defendants on account of their failure to convey title to certain land and water rights, in compliance with a contract of purchase between the parties. A jury being waived, trial was had before the court, resulting in findings and judgment against the defendants for the amount paid by

plaintiff upon the purchase price, and an attorney's fee paid
by it for examination of title, with interest. Both parties have
appealed, defendants contending that plaintiff is not entitled
to any recovery, and plaintiff contending that it is entitled to
recover for the loss of its bargain in addition to the amount
paid on the purchase price and attorney's fee for title exami-
nation, as adjudged by the trial court. Exceptions were taken
by both plaintiff and defendants to certain of the court's find-
ings, as well as to the refusal of the court to make certain of
the findings proposed by each. Upon a review of the entire
evidence we are not disposed to regard the ultimate facts dif-
ferent in any material respect from those found by the trial
court, which, so far as material to the matters here for review,
are as follows:

The plaintiff is a corporation, and the defendants are hus-
band and wife. On August 29, 1903, the parties entered into
a contract for the sale of certain land, water rights, and per-
sonal property in Douglas county, the provisions of which, so
far as necessary for our consideration, are as follows:

"This Agreement, made this 29th day of August, A. D.,
1903, between Donald Urquhart and Abbie Urquhart, hus-
band and wife, of the county of Douglas and state of Wash-
ington, of the first part, and Babcock, Cornish & Co., a cor-
poration organized under the laws of the state of Washing-
ton, party of the second part;

"Witnesseth, That in consideration of the stipulations here-
in contained, and the payments to be made as hereinafter
specified, the parties of the first part hereby do sell unto the
party of the second part the following described real prop-
erty situate in the county of Douglas, state of Washington,
and more particularly known and described as follows, to-
wit:  .  .  .

"The parties of the first part agree to furnish a good and
sufficient title to all of the lands heretofore described and any
personal property hereinafter mentioned and conveyed, and
to also warrant and defend the water right title to all the
meadow lands, contained in all the lands conveyed showing
commercial title with privilege of taking from stream known
as Crab creek, a sufficient amount of water to irrigate all the

meadow lands, to the extent of one cubic foot per second for each one hundred acres contained in said tract, provided that an amount of water necessary for above irrigation shall flow from the lake or swamp at the head of this stream."

On the date of the contract, plaintiff paid to defendants $10,000 upon the purchase price, which payment was made partly by the assignment of a note and mortgage and partly in cash. By the terms of the contract a deferred payment was to be made November 30, 1903, when a deed was to be given by defendants, and further deferred payments secured by mortgage to be given back by plaintiff. The arguments of counsel for all parties assume that the whole purchase price was to be $60,000, and the evidence also so indicates, though the contract states it to be a larger amount. Of the land conveyed by the contract there is 230 or more acres of meadow land which lies so it could be irrigated from the waters of Crab creek, and there flows in Crab creek sufficient water therefor to the extent of one cubic foot per second for each one hundred acres of the meadow land.

Prior to the making of the contract, officers of the plaintiff had investigated, were advised of, and knew to some extent, the condition of the title to the water rights of the defendants in connection with the land. No false or fraudulent representations were made by the defendants to the plaintiff at or before the making of the contract, in respect to their water rights in connection with the land. In addition to the $10,000 paid upon the purchase price, plaintiff incurred an expense of $50 paid to its attorney for an examination of abstracts of title furnished by defendants. A few days after the execution of the contract, defendants furnished to plaintiff abstracts of title for the purpose of showing the condition of their title to the land and water rights agreed to be conveyed, which abstracts did not show good title in the defendants for the quantity of water to be conveyed with the land by the terms of the contract. These abstracts were by plaintiff submitted to its attorney for examination, who reported in

writing to it that they did not show good title in defendants to the water rights to the extent required by the contract; a copy of which report was by plaintiff transmitted to the defendants with the request that they perfect their title and be prepared to carry out their contract; and on November 29, 1903, plaintiff was able, willing, and notified defendants that it was ready, to make the payments due upon the contract the following day, and execute notes and mortgage for the further deferred payments; but the defendants were then unable to convey the quantity of water required by the contract.

About Christmas time, 1903, defendants advised plaintiff that they had not been able to procure the quantity of water agreed to be conveyed by the contract, and requested plaintiff to rescind the contract, which plaintiff declined to do. Thereafter, in other conversations with plaintiff's representatives, the defendant Donald Urquhart stated that the defendants could not fulfill their contract as to furnishing the quantity of water required. Thereafter plaintiff refused to accept from the defendants deeds for the property agreed to be conveyed, which were tendered by defendants, upon the ground that the defendants were not the owners of and could not convey good title to the quantity of water stipulated in the contract, and for the same reason plaintiff refused to make further payments on the purchase price until good title was so furnished. The possession of the property was never transferred from the defendants to the plaintiff.

In August, 1904, the plaintiff commenced in the superior court for Spokane county an action against the defendants for damages on account of their failure to convey good title to the property as agreed by the terms of the contract; in which action substantially the same facts are alleged as grounds for relief, and the same prayer made for recovery of damages in its complaint, as in this action, and which action was thereafter dismissed. In February, 1905, the plaintiff commenced in the superior court for Spokane county a second action against the defendants, in which substantially the same.

facts are alleged as grounds for relief in its complaint as in this action; the prayer in the complaint differing from the prayer in this action in that it was in the alternative and, in substance, that by proper decree the defendants be required to reassign the note and mortgage assigned by plaintiff to defendants as part of the $10,000 paid on the purchase price, that it have judgment for the cash then paid, with interest, and for the further sum of $11,380.20, the latter of which included damage for loss of its bargain, or if the defendants could not or would not reassign the note and mortgage, then that plaintiff have judgment for the whole amount of first payment on purchase price, and its additional damages for loss of bargain. That action was transferred to Douglas county for trial, and was dismissed in July, 1905.

The trial court rendered judgment in this case in favor of plaintiff and against defendants, in April, 1908, for $12,830, being for $10,000, the amount paid on the purchase price, $50 attorney's fees for examination of title, and interest.

Counsel for defendants now contend that by commencing the second action in February, 1905, wherein plaintiff prayed for the reassignment of the note and mortgage assigned by it to defendants as part of the first payment upon the purchase price of the property, the plaintiff thereby elected a remedy which is inconsistent with the prayer in this action, and that it is thereby precluded from maintaining this action. Many authorities are cited and reviewed in support of the general doctrine that the definite adoption of one of two or more inconsistent remedies by a party fully acquainted with all the material facts is a conclusive and irrevocable bar to his resort to the alternative remedy. The view we take of this branch of the case renders it unnecessary to determine the question of the alleged inconsistency between the second action and this one. Whatever might be the determination of that question it is certain there is nothing inconsistent between this action and the first one commenced in August, 1904. That action, like this one, was simply a suit for damages on account of de-

fendants' failure to furnish good title to the property agreed to be conveyed. If the doctrine of election of remedies has any application to this controversy, it seems plain to us the election was made when the plaintiff commenced its first action in August, 1904. If any subsequent action by plaintiff is inconsistent with the remedy then invoked it was the second and not this one. Counsel for both sides cite numerous authorities supporting the doctrine that an election once made is irrevocable and conclusive, which we regard as the well settled rule. 15 Cyc. 262; 7 Ency. Plead. & Prac., 364; *Gaffney v. Megrath*, 23 Wash. 476, 63 Pac. 520; *Connihan v. Thompson*, 111 Mass. 270; *Thompson v. Howard*, 31 Mich. 309; *Conrow v. Little*, 115 N. Y. 389, 22 N. E. 346, 5 L. R. A. 693; *Robb v. Vos*, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 51.

But counsel for defendants contend that as between the first and second actions commenced and dismissed by plaintiff, they and not the plaintiff have the right to choose which should be taken as plaintiff's election of remedies. We do not regard this as a matter to be determined by the choice of either party. After the election is once made, as it was by the commencement of the first action, the law then fixed the rights of the plaintiff as to the nature of the remedy it might pursue, and limited it to such a remedy as would not be inconsistent with that action. It is true that it was optional with the defendants to plead a former election by the plaintiff of an inconsistent remedy, as a defense; and so it was optional with them to plead or waive any other defense they might consider themselves entitled to invoke, but when they sought to set up the second action as an election of remedies by the plaintiff, we think the plaintiff had the right to show that there had been a previous election by it, by the commencement of the first action which was not inconsistent with this. We see no reason for regarding the first election any less conclusive because there is more than one subsequent suit. The case of *Ludington v. Patton*, 111 Wis. 208, 86 N. W. 571, in some measure supports this view. No other case has come to

our notice involving more than two actions.  We are of the opinion that, in view of the commencement of the first action, the second action was not an election of remedies in the sense that plaintiff was thereby precluded from prosecuting this action.  If the second action was inconsistent with the first, which we do not decide, it was not available.  It was a mistaken remedy.  There are also other reasons suggested in the record and arguments indicating that it was not an available remedy at that time, which, however, we need not here discuss. It seems well settled that the doctrine of election of remedies has no application when the remedy chosen is not available, and we think a remedy is not available when there is a good defense to it.  Whether or not the defense is invoked or waived does not change the election.  *Belt v. Washington Water Power Co.*, 24 Wash. 387, 64 Pac. 525; *Magnus v. Woolery*, 14 Wash. 43, 44 Pac. 130; *Zimmerman v. Robinson & Co.*, 128 Iowa 72, 102 N. W. 814; 15 Cyc. 262.

In this connection defendants counsel contend that evidence of the commencement of the first action is not properly before the court in this case, since they affirmatively plead in their answer the election by the commencement of the second action, which plaintiff met in its reply by general denial, though admitting the fact of the commencement of the second action.  Defendants' counsel objected to the admission of evidence of the first action because the same was not specially pleaded in the reply.  We think, however, while they did not, in so many words, plead in their answer that the second action was an election of remedies, such is the effect of that plea, and this being denied in the reply, rendered admissible any evidence which tended to show that the second action was not an election.  Evidence of the first action did so show, and we think it was therefore admissible.

Defendants sought to show by oral evidence that they were not required to furnish the amount of water claimed by plaintiff under the contract.  This evidence consisted of conversations between the parties previous to and contemporaneous

with the making of the contract. While this evidence had
some legitimate bearing upon the number of acres for which
water was to be furnished, and also upon the defendants' al-
leged fraudulent representations as to their title to the water
rights, as affecting the measure of plaintiff's damages by
reason of failure of title, we do not think the terms of the
written contract were of such uncertain character as to re-
quire or admit of any oral evidence of contemporaneous or
previous conversations to make clear its meaning. It may not,
in this particular, be very aptly worded, but to any one ac-
quainted with the English language, it could have no other
meaning than that defendants were to convey good title to the
water rights to the extent of one cubic foot per second for
each one hundred acres of meadow land, which the evidence .
clearly shows to be at least 230 acres in extent. We think it
clear that a failure to furnish good title to water rights to
this extent would be a breach of the contract by defendants.
entitling plaintiff to recover.

Were defendants unable to and did they fail to furnish title
to the water required by the terms of the contract, and thus
breach the contract? In answering this inquiry we do not
feel called upon to review the lengthy abstracts of title fur-
nished by defendants to plaintiff and offered in evidence, in
view of defendants' admission of defects in their title to the
water rights and their voluntary efforts to cure the same, cov-
ering a period of several months immediately following the
date of the contract. The trial court made findings touching
the condition of defendants' title as shown by the abstracts,
in considerable detail, from which, together with the admis-
sion of defects, it concluded that defendants had failed to con-
vey and could not convey the quantity of water agreed upon,.
and thus were unable to carry out their contract. We regard.
the evidence as fully warranting this conclusion.

Upon plaintiff's cross-appeal it contends that, in addition
to the amount awarded by the judgment in this case, it is en-
titled to an additional sum as damages for loss of its bargain..

This presents the question of the measure of damages in cases of this character, and for a proper solution depends upon the nature of the representations made by defendants to plaintiff at and prior to the making of the contract, and their conduct evidencing good or bad faith thereafter as to carrying it out. The evidence seems to fully support the trial court's findings to the effect that there were no fraudulent representations made by the defendants to the plaintiff in respect to the water rights owned by them, at or prior to the making of the contract, and also that plaintiff at the time knew to some extent of the condition of those rights. Indeed, there is some evidence tending to show that the defendant Donald Urquhart expressed to plaintiff's representatives some doubt as to his ability to furnish title to all of the water required by the terms of the contract, and even hesitated to sign the contract on that account. There is nothing in the court's findings nor in the evidence indicating any lack of good faith on the part of the defendants in their efforts to perfect their title after the contract was made, nor any unwillingness on their part to carry it out so far as they could. This, in our opinion, brings this case, so far as measure of damages is concerned, within the rule which excludes compensation to the purchaser for loss of his bargain, but allows him to recover moneys paid upon the purchase price and expenses legitimately incurred in pursuance of the contract, with interest. This has been adopted as the measure of recovery by this court in cases where the seller is free from false representations or fraud inducing the purchase, and free from bad faith in his disposition to carry out the contract after it is made: *Morgan v. Bell*, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614; *West Coast Mfg. & Inv. Co. v. West Coast Imp. Co.*, 31 Wash. 610, 72 Pac. 455; except, the specific matter of including in the recovery expenses incurred by the purchaser in connection with the contract, in addition to sums paid on the purchase price, does not seem to have been before this court. The allowance of such expenses, however, as a part of the recovery is in no way inconsistent

with its holdings. In 2d Sutherland on Damages (3d ed.), § 582, in discussing what are the elements of damage under the rule which excludes damage for loss of bargain, in such cases, it is stated:

"Where only nominal damages can be recovered for the loss of the bargain, the vendee is entitled to recover his deposit, any payments he may have made on the contract of purchase with interest, and expenses incurred in investigating the vendor's title."

Our conclusion renders it unnecessary to discuss other matters presented in the arguments. We are of the opinion that the judgment of the trial court should be affirmed. It is so ordered.

Neither party will recover costs in this court.

RUDKIN, C. J., CHADWICK, MOUNT, CROW, MORRIS, FULLERTON, and GOSE, JJ., concur.