[No. 18276.  Department Two.  April 28, 1924.]

WILLIAM J. EMPEY et al., *Plaintiffs and Appellants*, v.
NORTHWESTERN AND PACIFIC HYPOTHEEKBANK
(NORTHWESTERN AND PACIFIC MORTGAGE
COMPANY), *Defendant and
Appellant*.[1]

VENDOR AND PURCHASER (63)—RESCISSION BY VENDEE—DEFECT IN
TITLE—EVIDENCE—SUFFICIENCY. A vendee may rescind a contract
of purchase where a survey of the lot disclosed that the house sup-
posed to be thereon extended for some distance over the line, the
true location of the line was in dispute, and the property is less
valuable than it would be were the line as represented.

SAME (64)—RESCISSION BY VENDEE—ESTOPPEL. The lapse of three
years, or any time short of the statute of limitations, does not
estop a purchaser or bar an action to recover for a defect in title to
that part of the premises occupied by the dwelling which extended
over the supposed line of the lot purchased.

SAME (67)—RESCISSION BY VENDEE—ACTIONS—CONDITIONS PRECE-
DENT—RESTORATION OF POSSESSION OF LANDS. Remaining in posses-
sion, after discovering a cloud on the title, does not estop the pur-
chaser from rescinding; since tender of restoration is not a con-
dition precedent where plaintiff shows a willingness to do equity.

SAME (75) — RESCISSION — OPERATION AND EFFECT — RENTS AND
PROFITS—RIGHT TO OFFSET. Where a rescission is sought because of
failure of title to part of the premises, the vendee waives the benefit
of his bargain, and the vendor may offset the rental value of the
property, occupied for a considerable period, against interest on the
purchase price paid, but not against the purchase price paid.

SAME (184) — MEASURE OF DAMAGES — PAYMENT OF TAXES AND
INSURANCE. Upon rescission by the vendee for defect of title, under
a contract requiring the vendee to pay taxes and assessments during
the term of the contract, the payments were part of the purchase
price, of benefit to the vendor, which should be returned to the
vendee.

Cross-appeals from a judgment of the superior court
for Spokane county, Blake, J., entered April 2, 1923,

[1]Reported in 225 Pac. 226.

upon findings in favor of the plaintiffs, in an action for rescission, tried to the court. Reversed on plaintiffs' appeal.

*Charles Grant* and *Cyrus Happy,* for plaintiffs and appellant.

*Post, Russell & Higgins,* for defendant and appellant.

FULLERTON, J.—This is an action brought by William J. Empey and his wife, as plaintiffs, against the Northwestern and Pacific Hypotheekbank, a corporation, as defendant, to rescind a contract for the sale of real property and to recover moneys paid thereon. From the judgment rendered, both parties appeal, and we shall refer to them as plaintiffs and defendant.

The cause was tried by the court sitting without a jury, and is before us as to its facts upon the findings made by the court. Somewhat summarized, the facts as found are the following: On September 5, 1917, the defendant, claiming to be the owner of the east half of lot two, all of lots three and four of a certain described block in the city of Spokane, and an abutting tract described by metes and bounds, contracted to sell and convey the same to the plaintiffs on a deferred payment plan; the plaintiffs agreeing to pay in addition to the agreed purchase price all taxes and assessments levied against the property during the continuance of the contract, and to keep the dwelling house then thought to be on the premises insured for such time at their own expense in the sum of one thousand dollars. One month after the execution of the contract, the plaintiffs were let into the possession of the premises. While they were so in possession, and sometime in the latter part of the year 1921, the owner of the abutting lot five in the block mentioned caused the same to be surveyed. The surveyor

making this survey found that the house theretofore supposed to be entirely upon lot four extended for some distance over the line and onto lot five. The plaintiffs thereupon caused the line dividing the lots to be run by another surveyor, who substantiated the survey of the first one. These surveyors, so the court finds, testified at the trial, the one stating that the house extended over the dividing line for a distance of three feet, and the other for one-half of its width. A third surveyor, however, evidently employed by the defendant, testified that the house was wholly upon lot four. The court then found that there existed a serious question as to the location of the lot line, and that its true location could not be determined in the pending action. It was further found that the plaintiffs had kept and performed all of the conditions of the contract up to and including the time of the discovery that the house might not be upon the land purchased; and that they had "paid to defendant on account of said contract for the purchase of said premises the sum of $2,549.62," and that the interest upon these sums from the time of their payment up to the time the plaintiffs surrendered possession of the premises, at six per cent per annum, amounted to $558.67. It further found that the reasonable rental value of the premises during the time of the plaintiffs' occupancy thereof was $17.50 per month, totaling a sum of $1,131.65.

From the facts so found the court concluded that the plaintiffs were entitled to a rescission, and were entitled to recover the sums paid on the contract with interest, a sum totaling $3,108.50, and that the defendant was entitled to offset against that sum the rental value of the premises, totaling $1,131.65. Judgment

was entered in accordance with the conclusions, and from this judgment the appeals are prosecuted.

Taking up the assignments of error in their logical order without special reference to the party urging them, the first to be noticed is that the facts found by the court do not justify a rescission of the contract. But it is our opinion that the evidence is sufficient. If the true dividing line proves to be where either of the first of the surveyors located it, the property is less valuable than it would be were the line as represented. There is a material reduction in the apparent size of the lot, and some adjustment must be made with a stranger to the contract with respect to the dwelling house if the plaintiffs are to retain it. As was said in *Dobbs v. Norcross*, 24 N. J. Eq. 327:

"Every purchaser of land has a right to demand a title which shall put him in all reasonable security, and which shall protect him from anxiety, lest annoying, if not successful suits be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value."

The differences here are plainly sufficient to affect the marketability of the title. Unless an agreement can be reached with the adjoining owner, nothing short of suit in court can finally determine the true location of the line. The plaintiffs did not contemplate purchasing an uncertain title to any part of the property, nor was it what the defendant represented it was selling.

But it is said that the plaintiffs had the open undisturbed possession of the property for more than three years before any question was raised as to title, and

since that time have had a like possession for at least two years, and it is argued, if we have correctly interpreted the defendant's meaning, that this works an estoppel on their part to complain. But the rule is otherwise. Nothing short of the period of the statute of limitations would work a successful bar to an action to recover that part of the premises the house occupies, and this time has far from elapsed, in so far at least as the record discloses. Nor are the plaintiffs estopped because they remained in possession after discovering the cloud upon the title, and began their action without surrendering the property. Restoration or tender of restoration of property is not a condition precedent to the commencement or maintenance of an action for rescission of a contract for the purchase of land. The action does not proceed upon the theory of a contract already rescinded, but proceeds on the theory that the jurisdiction of a court of equitable cognizance is needed to accomplish that end. It is therefore sufficient to show, as the plaintiffs did in this instance, a willingness to do equity. *Snarski v. Washington State Colonization Co.*, 53 Wash. 221, 101 Pac. 839; *Luddington v. Patton*, 111 Wis. 208, 86 N. W. 571.

The next question is whether the court erred in allowing the defendant to offset the rental value of the premises against the sums paid by the plaintiffs and interest thereon on the purchase price of the premises. On this question the courts are not in accord, either as to the rule itself or as to the reasons for the rule, whichsoever of them may be adopted. In instances where the vendor's title has wholly failed, seemingly there should be no offset; this for the reason that the vendor has lost nothing and the purchaser may be liable to account for the use and occupation of the

premises to the true owner.    But in instances where
a rescission is permitted because the vendor has not
a marketable title to the premises, or where (as in this
instance) his title to a part only of the premises fails,
the reason for disallowing an offset is not so clear.
The use and occupation, especially if it continues un-
disturbed over a considerable period of time, certainly
has value to the purchaser, and the rational ground on
which an offset is denied must be because he loses the
benefit of his bargain.    But this the vendee waives by
his form of action; he seeks not an affirmance with
damages, but a rescission with a recovery of the sums
lost because of the inability of the vendor to perform
his contract.    This can properly include the amounts
paid on the purchase price, with such other expendi-
tures as an owner is required or could reasonably be
expected to make, but it is a waiver of the value of the
contract, because the vendee does not seek enforce-
ment.

It is said, however, that this court is committed to
the doctrine that no offset can be allowed where a re-
scission is granted against either principal or interest.
The cases relied upon to sustain the claim are
*Ankeny v. Clark,* 1 Wash. 549, 20 Pac. 583; *Snarski v.
Washington State Colonization Co.,* 53 Wash. 221, 101
Pac. 839; and *Crawford v. Smith,* 127 Wash. 77, 219
Pac. 855.    The first of these cases is from the terri-
torial court.    In that case Ankeny had contracted to
sell to Clark two quarter sections of land, to one of
which he had no title.    After the payment of the pur-
chase price, he refused to execute a deed to the quarter
section to which he had no title, other than in such
form as would not obligate him.    In an action brought
by Clark to recover the purchase price with interest,
the court allowed a recovery.    It held, however, that

there could be no offset on account of use and occupation against the principal sum paid on the purchase price, but that an offset could be made against interest. Discussing the question, this language was used:

"The only remaining question relates to the claim of plaintiff in error for rents during the time that defendant in error had possession of the land under the contract of purchase. The authorities do not seem to be agreed upon the question as to the right of the vendor to rents upon a rescission of the contract of sale. But we think the more just and reasonable rule is to offset the claim for rent against the claim for interest. *Talbot v. Sebree's Heirs,* 1 Dana, 56; *Shields v. Bogliolo,* 7 Mo. 134; *Patrick v. Roach,* 21 Tex. 251; *White v. Tucker,* 52 Miss. 145; *Cook v. Doggett,* 2 Allen 441; *Bardsley's Appeal,* 10 Atl. Rep. 39."

The case was affirmed by the supreme court of the United States in *Ankeny v. Clark,* 148 U. S. 349.

The second case was an action brought to rescind a contract of sale of real property because of failure of title, and damages for the breach of the contract. The cause was tried to a jury, and the following instruction given:

"I also instruct you that, under the conditions in this case, that in case you find the plaintiff entitled to recover damages, that the defendant would be entitled to have deducted from the amount of that damage the rental value of the property during the time he occupied it. The rental value you are to take into consideration is the rental value of the property as the property was when he went there; not the rental value of it with the improvements upon it, which he has put there, but simply the rental value as it was when he went there and not after."

Error was assigned on the latter clause of the instruction, and in discussing it we said:

"Appellant insists that this instruction is erroneous because, if the respondents receive pay for their im-

provements, they should also pay rent for the use thereof. But this is not the rule in this class of cases. The respondents here were not in possession as tenants. They came into possession under a contract of sale, and were therefore not liable for rents for the use of the premises. *Ankeny v. Clark,* 148 U. S. 345, 13 Sup. Ct. 617, 37 L. Ed. 475. If there was error in this instruction it was in favor of the appellant, and therefore it cannot complain.''

In the third of the cited cases, the vendor held an absolute deed to the premises contracted to be sold, which this court held, in a case determined subsequent to the execution of the contract, to be a mortgage. In the opinion, this language was used:

''That the appellants, having made the contract with the respondents in good faith, should not be held for damages in an amount greater than the return of the payments made, less a reasonable rental value. It is conceded that the appellants thought that they had legal title to the property at the time they entered into the contract of sale with the respondents, and that they made no false representations. It is also true that the appellants had no title and were unable to perform their contract and entirely breached it. An examination of the authorities reveals that, in different jurisdictions, there are different measures of damages in actions of this nature. But this court is committed to the view—as are many others—that, under such circumstances as here, the proper measure of damages is the return of the amount which has been paid on the contract, with interest, together with the enhancement of the value of the property caused by the improvements reasonably and necessarily made by the vendee while in possession. In *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880, this rule seems to have been announced, as it was subsequently in *Babcock Cornish & Co. v. Urquhart,* 53 Wash. 168, 101 Pac. 713, and *Snarski v. Washington State Colonization Co.,* 53 Wash. 221, 101 Pac. 839, and there is nothing appearing in the cases of *Morgan v. Bell,* 3 Wash. 553,

28 Pac. 925, 16 L. R. A. 614; *West Coast Mfg. & Inv. Co. v. West Coast Imp. Co.,* 31 Wash. 610, 72 Pac. 455, and *Eves v. Curtiss,* 98 Wash. 367, 167 Pac. 748, contrary thereto; these latter cases establishing that the vendee is not entitled to damages for the loss of his bargain.''

In this case, it will be observed, the court was careful to limit the rule announced to the facts before it, and that it was rested on correct principles can hardly be doubted. The vendor had no title to the property and, from any fact disclosed, was not himself entitled to possession. Manifestly, he was not entitled to recover for use and occupation of the premises, even though it was through his instrumentality that possession was given to the vendee.

It is at once apparent, we think, that these cases do not lay down the broad rule contended for; that they establish rather two separate and distinct rules, namely: (1) that, where the vendor has no title to the property, the vendee may recover the sums paid towards the purchase price with interest, together with such reasonable and necessary expenses the vendee has incurred for improvements which enhance the value of the property; and (2) that, where the vendor has not a marketable title, or has valid title only to some part of the property, he may offset the value of the use of the premises, if occupied by the purchaser, against interest on the payments made towards the purchase price.

The latter of the rules, in so far as it determines the amount of the offset, is no doubt somewhat arbitrary. But it can be justified because of the necessity of the case. Any more particular inquiry would involve relative proportions and relative values, leading to no very certain results after the inquiry is completed. The adopted rule will seldom work injury to the ven-

dee, and it is clear that it will not do so in the present instance.

There is another question here presented, not presented in the cited cases, which must be noticed. By the terms of the contract, the vendee was obligated to pay the taxes and assessments levied upon the property during the term of the contract, and to keep the house on the property insured in a stated sum for the same time, and it is claimed that the principal of the sums paid on these accounts should be deducted on the principle which allows a deduction of interest. But, in our opinion, they are as much a part of the purchase price as were any of the other payments provided for in the contract. Primarily, they were obligations of the vendor; obligations which the vendor would have been required to meet had the contract not provided otherwise. As the defendant has received the benefit derived from their payment, in so far as benefit has accrued to either party, it is but just that it should return them to the payee.

Our conclusion is that the plaintiff is entitled to recover the principal sums expended without interest, and that the trial court was in error in allowing a deduction as for rents. The judgment appealed from is reversed, and the cause remanded with instruction to enter a judgment in accordance with the rule here announced.

MAIN, C. J., MITCHELL, and BRIDGES, JJ., concur.