[No. 35695.    Department One.    September 14, 1961.]

PAUL D. WICKRE, *Respondent,* v. W. GORDON ALLEN *et al.,* *Appellants,* CARRIE H. WICKRE, *Respondent.*\*

\*Reported in 364 P. (2d) 911.

*Imus, Marsh & Johnson (Morley, Thomas & Orona,* of counsel), for appellants.

*Studley & Purcell,* for respondents.

WEAVER, J.—This is an action for the rescission of a contract by which plaintiff purchased radio station KBAM in Longview, Washington. The trial court rescinded the contract of purchase because of defendants' fraud, granted plaintiff judgment for $25,000 (plaintiff's down payment) and canceled plaintiff's promissory notes for $59,718.82 (the balance of the purchase price) and the mortgages securing them.

Defendants make twenty-three assignments of error: seven to the findings of fact supporting plaintiff's theory of the case; thirteen to the refusal to enter defendants' proposed findings of fact—that fraud did not exist, that plaintiff was not entitled to rely on certain representations, that plaintiff waived his right to rescind, that defendants were entitled to judgment for the unpaid balance of the purchase price, that $800 per month was the reasonable rental value of the radio station during the time it was operated by plaintiff; and three assignments of error of a miscellaneous nature—the first to the admission of an exhibit in evidence, the other two formal and dependent upon our disposition of the first two categories.

The trial court found the following material representations, made by defendants and relied upon by plaintiff, to be *false*:

"(a) Said defendant represented as a fact that the net profit as shown by said Profit and Loss Statement in the sum of about $2,800.00 per month was a typical month's operation for said station and was the amount of net profit per month that the plaintiff and his wife could expect in the operation of said station.[1]

"(b) Said defendant represented as a fact that said station did not engage in trade-out[2] advertising except with Newton's Record Shop for records.

"(c) Said defendant represented as a fact that said station did not engage in cut-rate[3] advertising."

In his memorandum opinion, the trial court said:

"The case depends upon the credibility of the parties. . . . the representations of net income, and denial of trade outs and cut rate prices represent clear, cogent, and convincing evidence of fraud. . . ."

▮ There is substantial evidence in the record before us to support the finding of fraud and plaintiff's right to rely thereon. We cannot disturb it. *Hallin v. Bode, ante* p. 280, 362 P. (2d) 242 (1961), and case cited; *Thorn-*

[1]Upon appellate argument, the following colloquy took place between the writer of this opinion and appellants' counsel:

"Judge: What is the explanation, if any, of the two false financial statements? Do you dispute those at all?

"Counsel: No. *I do not dispute the fact that there were two false financial statements for July and August of that year*—August and September. We made no attempt to explain them and I say candidly, gentlemen, that some things are better not explained because they just get worse. But, in this particular instance—

"Judge: Counsel, I should warn you your argument is being tape recorded.

"Counsel: I understand that.

"Judge: The court uses such admissions.

"Counsel: *That's perfectly all right if I'm allowed to finish.*"

[Counsel was allowed to finish.]

[2]The term "trade-out" advertising is known in the radio business as the acceptance by a radio station of merchandise or services in lieu of cash for payment of radio advertising time.

[3]The term "cut-rate" advertising is the sale of advertising by a radio station at amounts less than the published rate.

*dike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 575, 343 P. (2d) 183 (1959), and cases cited. The evidence of fraud meets the test set forth in *Webster v. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428 (1934).

The following is the chronology of events we need consider:

September 25 and October 4, 1957, plaintiff and his wife discussed, at their home in Washington, D. C., the purchase of the radio station with one of the defendants.

October 14, 1957, plaintiff visited Longview, Washington, for approximately three days, to examine the station and the community.

December 24, 1957, plaintiff signed the purchase contract and made a $5000 down payment.

February 28, 1958, plaintiff paid an additional $20,000 and executed sixteen promissory notes, secured by real and chattel mortgages, the first note falling due January 2, 1959.

March 1, 1958, plaintiff took possession of the radio station, the Federal Communication Commission having theretofore approved the transfer of the broadcasting license.

May 19, 1958—approximately two and one-half months after taking possession of the station, during which period the fraud was discovered—plaintiff elected to claim a rescission of the purchase contract by commencement of this action. In his complaint, he tendered to defendants a return of all assets described in the contract. The tender was sufficient. *Bariel v. Tuinstra,* 45 Wn. (2d) 513, 525, 276 P. (2d) 569 (1954).

Shortly thereafter, he suffered a nervous breakdown and returned to Washington, D. C., where he remained until the trial of this action on January 26, 1960. The station was operated by a manager until June 8, 1959, when the court, upon defendants' petition, appointed a receiver, who now has possession and control of the station.

We find no merit in defendants' assignments of error that present their "Third Affirmative Defense"—"that plaintiff has been guilty of laches and unreasonable delay in bring-

ing this action. . . ." The record supports the conclusion that the election to claim a rescission of the contract was timely made by the commencement of this action. See *Lester v. Percy, ante* p. 501, 364 P. (2d) 423 (1961).

By appropriate assignments of error, however, defendants present their contention that plaintiff, by his conduct *after* the commencement of this action, waived his right to rescind the contract.

Plaintiff's actions that defendants claim constitute a waiver of his election to rescind the contract—which, of course, must be sufficient to constitute an abandonment of his right to maintain this action—are:

(a) Plaintiff listed the radio station for sale with two brokers in Washington, D. C.; plaintiff or the brokers advertised the station for sale in a trade publication of national circulation.

(b) Plaintiff, by letters dated December 29, 1958, and January 9, 1959, attempted to negotiate a sale of the station to Al Weeks, who was then managing the radio station.

(c) Plaintiff was identified as the owner of the station during the sign-off announcement.

(d) December 29, 1958, plaintiff's counsel tendered to defendants' counsel $3,906.30—the amount of the first installment note, plus interest—subject to certain conditions not germane to the issue of fraud. The conditions were not met and the payment was never made.

By way of explanation, plaintiff offered the following:

(a) (b) Less than a month after the commencement of this action and plaintiff's return to Washington, D. C., in poor health, plaintiff's wife received a letter from their counsel in Longview, Washington, written after a conference with defendants' counsel. The letter is subject to the interpretation that defendants would not be adverse to a resale of the station on some basis that would permit each party to recover his investment; hence, plaintiff's attempt to sell the station pending litigation.

(c) Regarding the use of his name as the owner of the station at the time of signing off the air, plaintiff testified:

"A. I was not the owner. I was the guardian. It was necessary for my name to remain associated with the license because of the FCC rules and regulations.

"Q. Is that why you had them make the sign off announcement in that manner?

"A. That is correct."

(d) Concerning the alleged tender of payment of the first installment note, plaintiff testified:

"The sum of approximately four thousand dollars was forwarded to my attorney on the basis of a compromise of the lawsuit."

Having considered these factors in relation to all the evidence, the trial court said, in his memorandum opinion:

"We have considered all of the actions of Wickre [plaintiff] together with the letter of his attorneys and do not believe a waiver of his right to a rescission has been established. There were no acts which unequivocally waive his right of rescission. All of the actions of Wickre were equivocal in our opinion."

Consequently, the trial court entered finding of fact XXII, which, in part, states

". . . that such acts were not an unequivocal election to retain the property under the contract and were not an unequivocal election by plaintiff to waive his right of rescission; that the evidence fails to disclose that plaintiff herein has in any manner unequivocally waived his right to rescind said contract."

We agree with the trial court.

The rule is well-stated in 24 Am. Jur. 37, Fraud and Deceit, § 210:

". . . Where subsequent acts are relied upon as a defense in a case where fraud is clearly established, it is said the acts must stand upon the clearest evidence, must evince a purpose to waive or forgive the fraud, and must amount to a clear election not to rescind. If what is done is merely for the purpose of saving the plaintiff from further loss, without any purpose to give up whatever right he may have either at law or in equity to rescind, the right of rescission will not be affected. Therefore, *one who has perfected his right to rescind* a fraudulent contract cannot lose it by merely taking care of the property received, or by preserving it in case it is of a perishable nature, unless

what he does is done with *the intent* to confirm the contract." (Italics ours.)

■ Whether it be claimed that plaintiff's actions constitute an affirmance or ratification of the contract, waiver of known fraud, or waiver of the right to rescind, it appears that the touchstone of the problem is the *intent* of the actor.[4] *Algee v. Hillman Inv. Co.,* 12 Wn. (2d) 672, 123 P. (2d) 332 (1942). As we said in *Vinneau v. Goede,* 50 Wn. (2d) 39, 41, 309 P. (2d) 376 (1957):

" . . . In any event, waiver is a matter of intent, and the court found upon overwhelming evidence that there was no intent to waive."

■ In determining intent, the nature of the subject matter of the contract should be considered. *Bariel v. Tuinstra,* 45 Wn. (2d) 513, 524, 276 P. (2d) 569 (1954), involved rescission of a contract for the sale of a dairy herd. This court said:

"When respondent refused to take back the cows at the time that appellant sought to rescind the sale, *appellant became an involuntary bailee* of the milk cows and had no alternative but to continue operating the dairy farm and selling the milk pending the outcome of this litigation. Consequently, respondent is in no position to complain because appellant continued to operate the dairy farm in order to preserve the fruits of the litigation for the prevailing party when he had no choice but to do just that." (Italics ours.)

*Holland Furnace Co. v. Korth,* 43 Wn. (2d) 618, 262 P. (2d) 772, 41 A. L. R. (2d) 1166 (1953), involved the rescission of a contract for the installation of a furnace. Continued use of the furnace, *after* notice of rescission, was held not to be a waiver of the right to rescind. The court said:

"It will be observed that . . . if it is made to appear that continued use of the property by the purchaser, after giving notice of rescission, is in compliance with his duty as bailee of the seller, no waiver or abandonment has occurred.

---

[4]Shattuck: "Contracts in Washington 1937-1957," 34 Wash. L. Rev. 527, fn. 748.

"In our opinion, the nature of a home heating installation is such that, if the purchaser gives the seller prompt notice of rescission, including a request that the installation be removed, continued reasonable use of the heating system pending such removal by the seller *may be found to be in keeping with the purchaser's duty as an involuntary bailee,* and hence not necessarily an acceptance of the goods and waiver of the rescission. (p. 627)

" . . .

"Under these circumstances, continued use of the furnace did not evidence an intention inconsistent with the continued insistence on rescission. It did not violate the purchaser's duty as an involuntary bailee. It did not (except as compelled by the seller's own conduct) interfere with the ultimate restoration of each party to his *status quo.*" (p. 628) (Italics ours.)

■■ Commencement of this action did not, *ipso facto,* rescind the contract, for

" . . . The action [of rescission] does not proceed upon the theory of a contract already rescinded, but proceeds on the theory that the jurisdiction of a court of equitable cognizance is needed to accomplish that end. . . ." *Empey v. Northwestern & Pac. Hypotheekbank,* 129 Wash. 392, 396, 225 Pac. 226 (1924); quoted with approval in *Hopper v. Williams,* 27 Wn. (2d) 579, 588, 179 P. (2d) 283 (1947).

Plaintiff's commencement of this action was an unequivocal election to claim a rescission of the contract. It did not, however, force him to choose between abandoning his right to rescind or closing the station. A broadcasting station operates under federal license and the rules and regulations of the Federal Communication Commission. Its real value is as an operating business. Defendants were not misled. Having tendered a return of the property in his complaint, plaintiff alleged that, since the preservation of the assets required the continued operation of the station, he would operate and manage it, keeping full and complete books and records "until this matter is determined by the above-entitled court." Defendants not having accepted the tender, plaintiff became an involuntary bailee, and his continued operation and actions were consistent with a

preservation of "the fruits of the litigation for the prevailing party." Defendants are not in a position to complain of plaintiff's actions.

The letter of plaintiff's counsel, by which tender of the first installment payment was made (subject to certain conditions that were never met) stated:

"This letter is written with the understanding that we preserve all of our rights under this contract and as a result of the execution thereof."

This is sufficient to preserve plaintiff's rights already established by his election to rescind.

Plaintiff's actions were not so unequivocal that it can be said, as a matter of law, that he intended to waive his previously announced election to rescind the contract. *Birkeland v. Corbett,* 51 Wn. (2d) 554, 565, 320 P. (2d) 635 (1958).

■ The trial court, having announced that
"Under the circumstances of this case we do not believe it would be equitable for defendant[s] to be awarded as an offset the rental value of the premises,"
defendants assign error to the court's refusal to find that the reasonable rental value of the station was $800 per month. This assignment of error is not argued in defendants' brief, and we cannot consider it. *San Juan County v. Hage,* 54 Wn. (2d) 419, 341 P. (2d) 872 (1959), and authorities cited.

■ We assume, *arguendo,* that exhibit No. 7—which purports to be the result of a survey to determine the percentage of listeners for each radio station in the area—was hearsay and was not properly identified. Its admission in evidence was error, but harmless error. When placed in its proper perspective with the mass of testimony and exhibits in the record of this case, it becomes apparent that its exclusion could not have changed the results.

"Wrong directions which do not put the traveler out of

his way, furnish no reason for repeating the journey." *Cherry v. Davis*, 59 Ga. 454, 456 (1877).

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.

---

November 28, 1961. Petition for rehearing denied.

\*Reported in 364 P. (2d) 916.